ALICE A. LINGLE, Defendant in Error, *vs.* GRACE J. BUL-FER *et al.* Plaintiffs in Error.

*Opinion filed October 28, 1926.*

1. EVIDENCE—*chancellor is presumed to have considered only competent evidence.* Where there is ample competent evidence to sustain a decree it will be upheld regardless of incompetent evidence in the record, as the chancellor is presumed to have considered only the competent evidence; and although evidence to impeach a witness before the master, while including proper evidence of the record of conviction of a felony, includes also improper evidence of the record of convictions of misdemeanors, it will be presumed the incompetent evidence was not considered.

2. SAME—*neither husband nor wife of adverse party may testify where complainant sues as heir or representative.* Where a complainant in a suit to set aside deeds is suing both as administratrix of her husband's estate and as his heir, neither an adverse party, nor the husband or wife of such party, may testify in said party's behalf.

3. COSTS—*when allowance of master's fees will not be set aside as excessive.* An allowance of $676.55 as master's fees in a suit to set aside deeds, where the property involved is worth but $3850, will not be set aside as being excessive, where there is no objection to the amount allowed per day and no showing of unreasonable delay in the hearing or that the days allowed for were not actually or necessarily employed by the master in the hearing.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding.

EDWARD J. KELLEY, for plaintiffs in error.

EDWARD J. GREEN, for defendant in error.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

This was a bill in chancery filed November 29, 1918, in the circuit court of Cook county by the defendant in error, Alice A. Lingle, individually and as administratrix of the

estate of her deceased husband, Charles A. Lingle, to cancel and set aside two deeds dated June 29, 1918, purporting to be executed by herself and husband, each conveying certain property in the city of Chicago to Joseph R. Knipe, and also two deeds to the same properties dated October 5, 1918, purporting to be signed and executed by Knipe to Grace J. Bulfer; that an accounting of the rents be had and that a receiver be appointed to collect the same. The master on hearing reported in favor of the relief asked for, and the chancellor approved the recommendation of the master and decreed that the deeds be canceled and the title be declared to be in the heirs-at-law of Charles A. Lingle, and that the money collected be divided between the complainant individually and as administratrix as in the decree provided. The cause is here on writ of error by Grace J. and Philip Bulfer.

The principal questions raised here are questions of fact, all of which have been decided adversely to the contentions of plaintiffs in error by the master and also by the chancellor.

Charles A. Lingle owned the two pieces of property in question when he married defendant in error. Marital troubles had arisen between the Lingles and a separation threatened. On June 30, 1918, Lingle secured the signature of his wife to two separate deeds. Mrs. Lingle testified that the deeds were blank at the time she signed them, both as to description of property and as to grantee. In this she is corroborated by the testimony of William J. Albright, a former brother-in-law of Lingle, and Chris P. Anderson, a friend of Lingle, both of whom testified that after the separation of the Lingles, on July 13, 1918, Lingle asked each to take the title to the property in his name. H. G. Coney, who held the mortgage on one of the pieces of the property, testified that he saw a deed signed by Lingle and wife and that it was blank and contained no acknowledgment of the signatures; that Lingle showed it

to him and wanted him to fill it in, transferring it to someone, which he refused to do. The deeds as recorded and introduced in evidence here, bear the date of July 6, 1918, and cover the two pieces of property, with Joseph R. Knipe as grantee and Philip Bulfer, one of the plaintiffs in error, as notary public taking the acknowledgment. These deeds were recorded on July 29, 1918. Bulfer, his wife, Grace J. Bulfer, the other plaintiff in error, and their daughter, Florence, all testified that the Lingles came to the Bulfer home and in their presence acknowledged their signatures to the two deeds. On this point Mrs. Lingle testified that she had never been to Bulfer's house and did not know or meet Bulfer until after her husband's funeral. In this she is supported by the testimony of Mrs. Moore, who said that Bulfer asked her at the Lingle funeral if the lady that he pointed to was Mrs. Lingle, and that Mrs. Moore replied that it was. Albert Watts testified that in August, 1918, as a representative of Mrs. Lingle, he called upon Bulfer to discuss the settlement of the marital difficulties, and that in response to one question put by Watts as to how long Bulfer had known Mrs. Lingle, Bulfer replied, "I never met the lady." The claim of Mrs. Lingle is that her signature to the deed and the purported transfer to Knipe were but efforts to defraud her of her interest in her husband's property upon their separation and intended subsequent divorce. Her contention in this regard is, that the title was put in Knipe's name by her husband without consideration from Knipe and that he was merely holding the property for her husband on a secret understanding. There is evidence in the record to uphold such claim. Several witnesses testified that repairs to the property were made by Lingle after the date of the deed and up to the time of his death. In making out an application for a renewal loan on one of the properties in August, 1918, both Knipe and Lingle signed the application, the witness testifying to the transaction stating that Knipe said

at that time he was only holding the property for Lingle. The renewal notes were signed by both Lingle and Knipe. On July 30, 1918, Lingle and Knipe both signed a contract for a warranty deed to one of the properties, with Heito Suk as purchaser thereof on a payment plan. Suk paid down $600 on this transaction, making the payment to Bulfer, who appears to have made the sale. Bulfer kept $125 for himself and drew his own check for $475 on August 3, 1918, payable to Lingle and not to Knipe, which check was turned over to the loan company. All of these transactions were had after the date appearing in the deeds and after the date of their recording. Thereafter, on October 5, 1918, Knipe was injured by a street car and died in January following. Deeds to the two pieces of property in question herein were recorded on October 21, 1918, the same day Lingle was buried, said deeds bearing date of October 5, 1918, (the day of Knipe's injury,) purporting to have been signed by Knipe, transferring the properties to Grace J. Bulfer. In these two deeds Bulfer is also the notary public taking the acknowledgment. The bill herein questioned the signature of Knipe to such deeds, claiming it to be a forgery, and an expert on handwriting testified that in his opinion, after comparing the original deeds with acknowledged genuine signatures of Knipe, the signatures on the deeds were not those of Knipe. This is also testified to by Knipe's relatives. Bulfer, his wife and Edward Bish testified that Knipe was at Bulfer's house the night of the accident and that they all saw him sign the deeds. An assistant bank cashier testified that in his opinion the signatures on the deeds were the same as on the other exhibits shown him, admitted to contain genuine signatures of Knipe.

The claim of the plaintiffs in error is that the various transactions from the Lingles to Knipe and then to Mrs. Bulfer represented a purchase by Bulfer of the properties from Lingle, the transfer being first made to Knipe to hold

322—39

title for Bulfer, Bulfer testifying that he did not want to take title for the reason that he did not want to execute the loan renewal notes. As proof of the consideration therefor, Bulfer testified that he made several loans to Lingle running from $150 up to $800, the loans being prior to the transfer of the property. It was shown Bulfer had very little property or money. He testified that he loaned Lingle money that he received from his mother's estate in Marshalltown, Iowa, and from savings of his wife, who had several years before been a school teacher. He had not given Lingle the money from any checking account in a Chicago bank. He testified that he sometimes gave Lingle cash out of a box at home and usually just turned over to Lingle the drafts or checks he received from Marshalltown. He was unable to tell whether the money he received was in the form of bank drafts or bank checks and could not say whose names were signed thereto or tell how much he got or the dates thereof. The bank account of Lingle showed no deposits of any such amounts, but showed, on the other hand, that at the time of some of the loans Bulfer testified he made to Lingle the latter had money in the bank and was both depositing and drawing out small sums. There is no evidence showing any disposition of such amounts or investments made by Lingle during or after the times of such claimed loans. Records were introduced in evidence for the purpose of impeaching Bulfer, showing a conviction and imprisonment in the penitentiary in 1907 for conspiracy to obtain signatures by false pretenses; also, record of pleas of guilty and fines in 1909 in each of four cases on a charge of conspiracy, and of imprisonment in the house of correction in 1910 upon a plea of guilty to petit larceny. The fact of such fine and imprisonments was not denied by Bulfer.

The question before this court is whether the decree rendered by the chancellor is the proper one under the law and the evidence. (*Chechik* v. *Koletsky,* 311 Ill. 433;

*Corbly* v. *Corbly,* 280 id. 278.)    We think that a consideration of the competent evidence in the case results in but one conclusion, and that is that defendant in error is entitled to the relief prayed in her bill and given her by the decree.    Much of the argument on behalf of both sides in this court is as to the competency of testimony and exhibits which were admitted at the hearing, but it is to be presumed that the chancellor excluded all incompetent testimony and acted only upon that which is competent.    There is ample competent evidence to sustain the decree, and it will be upheld regardless of the incompetent evidence in the record. *Heintz* v. *Dennis,* 216 Ill. 487.

Plaintiffs in error insist that while the conviction of Bulfer of the felony resulting in penitentiary imprisonment was competent, the record of convictions of the misdemeanors was not competent for the purpose of impeachment of his testimony, and that the master and chancellor were unduly prejudiced by such proof.    This court has held that that section of the Evidence act allowing the introduction of evidence of the conviction of a crime for the purpose of affecting the credibility of a witness does not cover or include proof of those offenses not made infamous by the common law and which are only statutory offenses, punishable by fine and imprisonment in the county jail.    (*Matzenbaugh* v. *People,* 194 Ill. 108.)    The record of convictions complained of was not competent under the rule above stated and it is presumed the same was not considered by the chancellor.

Defendant in error objected to the competency of Philip and Grace Bulfer to testify on the ground that she (defendant in error) was suing as heir and representative of a deceased person.    Section 2 of the Evidence act provides that "no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his

own behalf, by virtue of the foregoing section, [section 1,] when any adverse party sues or defends * * * as the executor, administrator, heir, legatee or devisee of any deceased person, * * * unless when called as a witness by such adverse party," and this court has held that, applying to this section the provisions of section 5 of the same act rendering the husband and wife incompetent to testify for each other, husband and wife cannot testify for or against each other in such instances. (*Treleaven* v. *Dixon,* 119 Ill. 548; *Pyle* v. *Pyle,* 158 id. 289.) Defendant in error was suing both as administratrix of her husband's estate and as his heir. The testimony of both of the Bulfers was therefore incompetent. The defense is based largely on the testimony of Bulfer and his wife and is not sustained.

It is also contended that the master's fees in his allowance for time spent by him were excessive; that although the amount per day was not objectionable, he had put in too many days in hearing the case. The equity in the property was valued at $3850. The master's fees allowed are $676.55. No showing was made in the record as to the number of days required in the hearing before the master. While we are loath to approve so large an allowance for master's fees in such a case, there is no showing that the days allowed for were not actually or necessarily employed by the master in the hearing. The record shows no unreasonable delay in the hearing.

The decree was fully justified on this record and will be affirmed.                *Decree affirmed.*