TAYLOR v. WALTER

DECISION OF THE COURT

1. APPEAL AND ERROR—EQUALLY DIVIDED COURT.

Decision of the Court of Appeals that, in an automobile accident case, the trial court did not abuse its discretion in refusing to permit plaintiff's counsel to ask defendant about his driving record after defendant denied that he had ever been arrested and convicted of a crime is affirmed by an equally divided Court.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Witnesses §§ 621, 640, 647.
     5 Am Jur 2d, Appeal and Error § 902.
[2, 12]  58 Am Jur, Witnesses §§ 640, 647, 748, 751.
[3]  58 Am Jur, Witnesses §§ 620, 621.
[4]  53 Am Jur, Trial § 181.
     30 Am Jur 2d, Evidence § 1080.
[5]  7 Am Jur 2d, Automobiles and Highway Traffic §§ 216, 217.
     8 Am Jur 2d, Automobiles and Highway Traffic § 798 et seq.
[6]  58 Am Jur, Witnesses §§ 630, 631, 748, 752.
[7]  29 Am Jur 2d, Evidence § 316.
[8]  58 Am Jur, Witnesses §§ 614, 615, 620, 623, 647, 648, 734, 737.
[9]  29 Am Jur 2d, Evidence § 701.
     30 Am Jur 2d, Evidence § 1098.
[10]  58 Am Jur, Witnesses § 747.
[11]  7 Am Jur 2d, Automobiles and Highway Traffic §§ 168, 312.

FOR REVERSAL

BLACK, T. M. KAVANAGH, and ADAMS, JJ.

2. WITNESSES—EVIDENCE—CROSS-EXAMINATION—DRIVING RECORD—CONVICTION.

> *Refusal to uphold plaintiff's right to cross-examine defendant about his driving record after defendant denied that he had ever been arrested and convicted of a crime was reversible error (GCR 1963, 607).*

3. WITNESSES—CROSS-EXAMINATION—PREJUDICE.

> *One of the primary purposes of cross-examination is that of discrediting either the witness or his testimony, whether he be a party or not, and it should not be restricted in any instance merely because it creates "substantial danger of undue prejudice."*

4. EVIDENCE—PROBATIVE VALUE—ADMISSIBILITY.

> *"Probative value" of admissible evidence is for the triers of fact, and a trial judge has no right to exclude such evidence by interposing his judgment of "undue prejudice."*

5. CRIMINAL LAW—PROHIBITED LEFT TURN—MISDEMEANOR—CRIMES.

> *Violation of prohibited left turn, being a misdemeanor, is a crime, even though some currently do regard misdemeanors as mere mischievous trifles (MCLA § 750.5).*

6. WITNESSES—CREDIBILITY—CROSS-EXAMINATION—CRIMINAL LAW—MINOR TRAFFIC VIOLATIONS.

> *As for those who allege that minor violations of law by motorists are petty crimes, conviction of which should be excluded from the area of cross-examination for credibility, it need only be said that in this state, as far back as 1867, the witness has always been permitted to respond by stating the circumstances of his conviction, whether that conviction was brought about by trial or plea.*

FOR AFFIRMANCE

T. E. BRENNAN, C. J., and DETHMERS and KELLY, JJ.

7. NEGLIGENCE—EVIDENCE—PRIOR NEGLIGENT CONDUCT.

> *Courts generally deny the admissibility of evidence, in actions for negligence, of the reputation of the defendant, his habits of negligence, his habitual negligent conduct, etc., upon the issue of his negligence at the time of the injury complained of, as such evidence with respect to care or skill is inadmis-*

sible as tending to prove the quality of his conduct on a specified occasion.

8. AUTOMOBILES — EVIDENCE — CROSS-EXAMINATION — TRAFFIC OFFENSES — NEGLIGENCE.

Generally speaking, the courts have refused to permit the cross-examination of an automobile driver in civil actions as to prior arrests or convictions for traffic offenses on the ground that the introduction of such evidence would lead to a consideration of collateral issues having no bearing on the question of the driver's negligence in the accident under consideration.

9. EVIDENCE—ADMISSION—PLEA OF GUILTY—TRAFFIC OFFENSES.

An automobile driver's plea of guilty to traffic infractions charged against him amounts to a statement or admission by him that he did the act charged and, as such, it should be treated like any other admission or confession, and subject to the same rules relating to its weight and effect.

10. WITNESSES—CREDIBILITY—CONVICTION—COMMON LAW.

The rule of the common law was that a prior conviction may be shown to attack the credibility of a witness only if it was a conviction of a crime.

11. CRIMINAL LAW—TRAFFIC OFFENSES—MISDEMEANORS—FELONIES —MORAL TURPITUDE—INTENT—NEGLIGENCE.

An important distinction exists between traffic violations and lesser misdemeanors on the one hand and felonies and their consequences on the other hand because: (1) most traffic violations do not involve the degree of moral turpitude associated with crime, (2) in traffic violations, expediency and convenience, rather than guilt, often control the defendant's "trial technique", (3) most of the violations under traffic statutes are mala prohibita and not mala se, (4) intention to commit a crime is not an ingredient of the offense, and (5) the issues of negligence, contributory negligence, and the proximate relation of the violation of the statute to the accident are not involved in criminal proceedings, whereas they are important issues in civil cases.

12. WITNESSES — CREDIBILITY — CROSS-EXAMINATION — MISDEMEANORS — COLLATERAL MATTERS — ADMISSIBILITY — DISCRETION.

The admissibility of collateral matters, such as cross-examination on unrelated misdemeanors, offered solely to test credibility, is within the trial court's discretion (GCR 1963, 607).

Appeal from Court of Appeals, Division 1, Levin, P. J., and T. G. Kavanagh and Newblatt, JJ., affirming Wayne, Neal Fitzgerald, J. Submitted May 6, 1970. (Calendar No. 9, Docket No. 52,327.) Decided October 6, 1970. Rehearing granted November 30, 1970.

15 Mich App 361 affirmed by an equally divided Court.

Complaint by James W. Taylor against Rudi Walter for personal injuries sustained when defendant's automobile struck him. Verdict and judgment for defendant. Plaintiff appealed. Affirmed. Plaintiff appeals. Affirmed by an equally divided Court.

*Albert Lopatin* (*Norman L. Zemke,* of counsel), for plaintiff.

*Roy P. Nelson,* for defendant.

*Amicus Curiae: Smith & Brooker, P. C.* (by *Webster Cook* and *Mona C. Doyle*).

BLACK, J. (*for reversal*). The stated and accepted question for review is presented by counsel as follows:

"Did the circuit court err in not allowing plaintiff's counsel to ask defendant about his driving record after defendant denied that he had ever been arrested and convicted of a crime?"

The question arose below and is brought here upon this portion of the record. Plaintiff's counsel is cross-examining:

"*Q.* Mr. Walter, have you ever been arrested or convicted of a crime?
"*A.* No.

*"Q.* No?

*"A.* What do you mean, 'arrested or convicted'?

*"Q.* Of a crime?

*"A.* Of a crime, no.

*"Q.* Mr. Walter, on June the 9th, 1963, were you arrested and convicted of a crime of prohibited left turn?

*"Mr. Nelson:* Oh just a minute. What are you trying to do?

*"The Court:* Now wait a minute. I will sustain the objection.

*"Mr. Nelson:* If that is a crime there must be 50 percent of the people walking the street today that are criminals.

*"The Court:* It is not a crime.

*"Mr. Lopatin:* Your Honor, I would like to cite a case to the court.

*"The Court:* Well, it is not going to be permitted in here, whether you cite a case or not. It is not a crime.

*"Mr. Lopatin:* Your Honor, I am using—

*"The Court:* You have had a ruling. You have had a ruling. Now go ahead. You are overruled.

\*     \*     \*

*"Mr. Lopatin:* Your Honor, may I approach the bench?

*"The Court:* About what?

*"Mr. Lopatin:* About your previous ruling.

*"The Court:* No, I am not going to change it. It is going to stay just as made."

For reasons given in *Perin* v. *Peuler* (rehearing 1964), 373 Mich 531[1] and particularly in *Van Goosen* v. *Barlum* (1921), 214 Mich 595 and *Niedzinski* v. *Coryell* (1921), 215 Mich 498, we hold that the trial judge and Division 1 erred reversibly in refusing to uphold plaintiff's right to cross-examine as sought by him. Further, we are obliged to register strong

---

[1] See the outgrowth of *Perin* v. *Peuler* (footnote at 543), that is, GCR 1963, 607 adopted February 2, 1965.

disagreement with the application below—to the stated question—of Rule 303 of Professor Morgan's Model Code of Evidence, and to the seeming adoption by Division 1 of Professor McCormick's "undue prejudice" test. See the third from last paragraph of the opinion below, 15 Mich App at 364.[2] It is safe to say that one of the primary purposes of cross-examination is that of discrediting either the witness or his testimony, whether he be a party or not, and that it should not be restricted in any instance merely because it creates "substantial danger of undue prejudice."

There is always danger of prejudice to and against any witness when he is under the necessarily broad latitude of cross-examination. Many times that prejudice is deserving, even if it is "undue." As for the separated passages of McCormick's text to which Division 1 referred, they require but contextual reading to ascertain that all are quite out of line with our repeated view that the "probative value" of *admissible* evidence is for the triers of fact, and that the trial judge has no right to exclude such evidence by interposing his own judgment of "undue prejudice."

The error committed by the trial judge appears from his twice-repeated summary ruling that the "crime of prohibited left turn" *is not a crime.* Being a misdemeanor, the violation put to this defendant by the cross-examiner was a crime; yes, even though some currently do regard misdemeanors as mere mischievous trifles. Such has been the law ever since the handing down of *People* v. *Hanrahan*

---

[2] The paragraph:

"Michigan follows the rule suggested in Rule 303, Model Code of Evidence which permits a trial judge in his discretion to exclude admissible evidence if he finds that its probative value is outweighed by the risk that its admission will create substantial danger of undue prejudice. See McCormick, Evidence, § 42, pp 87–94, and § 152, pp 319–321."

(1889), 75 Mich 611, 619, 620 (accord *People* v. *Sarnoff* [1942], 302 Mich 266, 272), and is presently ordained by § 5 of chapter 1 of our penal code (MCLA § 750.5; Stat Ann 1962 Rev § 28.195). Hence no question of discretion is before us, none having been exercised. That is patent as one reads the discourse, quoted above, which preceded the vain effort of plaintiff's counsel to approach the bench.

As for those who allege that minor violations of law by motorists are petty crimes, conviction of which should be excluded from the area of cross-examination for credibility, it need only be said that in this state, as far back as *Wilbur* v. *Flood* (1867), 16 Mich 40 the witness has always been permitted to respond by stating the circumstances of his conviction, whether that conviction was brought about by trial or plea. As said in *Wilbur* at 44, "If there are extenuating circumstances, no one else can so readily recall them." From time to time we have reiterated this rule, notably in *Perin* v. *Peuler* (1964), 373 Mich 531, 545 with citation of the cases, and it makes for selective caution on the part of thoughtful cross-examiners.

To illustrate: The thrust of a cross-examination which depends only upon minor or even non-moving violations of a motorist-witness is apt to generate prejudice the wrong way, for it is difficult in these days to find a juror whose motoring record equals that of the content of Ivory soap. So, when the direct examiner picks up the soft issue on redirect examination and asks for the witness' explanation or explanations, his opponent has to sit still and take that which is bound to make for effective jury argument later on.

The undersigned vote to reverse and remand for new trial. Costs of all three courts thus far sustained to plaintiff.

T. M. KAVANAGH and ADAMS, JJ., concurred with BLACK, J.

KELLY, J. (*for affirmance*). The only issue presented to the jury was whether plaintiff, at the time he was struck by defendant's automobile, was crossing a street in the City of Detroit while walking in the crosswalk, or whether he was crossing in an improper manner at a place where defendant had no reason to anticipate plaintiff's presence.

The only assigned error in this appeal relates to defendant's cross-examination during the last few closing minutes of a two-day jury trial.

## ISSUES

In an opinion overruling plaintiff's motion for new trial, Wayne County Circuit Judge Neal Fitzgerald stated:

"The plaintiff is seeking a new trial on the ground that the court failed to permit him to cross-examine the defendant with regard to his driving record in order to test his credibility. * * *

"This objection [defendant's] was made and sustained because the tone of voice of the attorney for the plaintiff plainly indicated that he was endeavoring to establish that the defendant was a criminal in the sense of a felon, rather than just a simple citizen who had received a traffic ticket. Furthermore, the court does not believe that there was any possible relevancy even to this defendant's credibility in questioning him about his driving record. The sole issue in this case was whether or not the plaintiff had walked into the side of the defendant's car, or whether the defendant had struck him as he passed through the crosswalk.

"It is the opinion of this court that fairness requires that no insinuation be made as to defendant's criminal character; and, furthermore, that any

cross-examination to determine credibility must at least be relevant. It seems that at best this ruling of the court would constitute immaterial error, and in no way had any effect whatsoever on the verdict of the jury."

Plaintiff's brief filed in this Court refers to the above quoted opinion denying the motion for new trial, as follows:

"It is interesting to observe that the circuit court changed the basis for its ruling, as may be seen from the above quoted materials, between the trial and the time of his opinion denying motion for new trial. The question of the plaintiff's counsel's tone of voice was not indicated at the trial. Also, the circuit court opinion questions the relevancy even as to defendant's credibility; the circuit court does this, however, in the face of prior determinations of the Supreme Court that such is relevant. It is true that the convictions do not go to the ultimate factual questions, but they do go to the credibility of the testimony being submitted to determine the factual questions."

In affirming the trial court, the Court of Appeals[1] after referring to GCR 1963, 607,[2] stated (pp 363–364):

"The Supreme Court, in *Zimmerman* [*Zimmerman* v. *Goldberg* (1936), 277 Mich 134], distinguished between cross-examination on a prior plea of guilty to the very conduct relating to the civil action, and cross-examination on unrelated misdemeanors, stat-

---

[1] *Taylor* v. *Walter* (1968), 15 Mich App 361. Appeal granted (1969), 382 Mich 773.

[2] "During the trial of civil actions the rules of evidence approved in *Van Goosen* v. *Barlum*, 214 Mich 595; *Zimmerman* v. *Goldberg*, 277 Mich 134; *Socony Vacuum Oil Co.* v. *Marvin*, 313 Mich 528; *Cebulak* v. *Lewis*, 320 Mich 710, and re-enacted by PA 1961, No 236, § 600.2158, shall prevail, anything in section 731 of the Michigan Vehicle Code (CLS 1961, § 257.731) to the contrary notwithstanding." 374 Mich xv.

ing that the admission of the latter is discretionary. This is the position of the majority of jurisdictions. Wigmore, Evidence (3d ed), §§ 983–987. (See *Wilbur* v. *Flood* [1867], 16 Mich 40.)

"Plaintiff has interpreted the court rule to read that admission of such collateral matters for impeachment purposes is mandatory and argues that the court's exclusion of this evidence amounted to reversible error. In view of the language in *Zimmerman, supra,* we do not agree with plaintiff's interpretation but hold that the admissibility of such collateral matters as involved here, offered solely to test credibility, is within the trial court's discretion.

"Michigan follows the rule suggested in Rule 303, Model Code of Evidence which permits a trial judge in his discretion to exclude admissible evidence if he finds that its probative value is outweighed by the risk that its admission will create substantial danger of undue prejudice. See McCormick, Evidence, § 42, pp 87–94, and § 152, pp 319–321."

In conceding that the trial court had discretion, plaintiff claims to this Court that it was a limited discretion, stating:

"The Court of Appeals held in the instant appeal that it is a matter of discretion with the trial judge as to whether or not evidence of former convictions for traffic violations may be admitted for purposes of impeachment. Plaintiff submits, however, that such an interpretation is a too narrow view of the function of Rule 607. Rather, the proper interpretation and application of the rule is that evidence of former convictions for traffic violations is admissible for the sole purpose of impeaching credibility. What *is* a matter of discretion is whether or not the witness may be further interrogated concerning the facts and circumstances leading up to the arrest and conviction."

Defendant comments on GCR 1963, 607, as follows:

"Rule 607 refers to four cases as covering circumstances wherein evidence of traffic convictions may be admissible. The case of *Van Goosen* v. *Barlum* [1921], 214 Mich 595, permitted traffic convictions to be used under MSA 27A.2158 as drawing in question the credibility of the witness. *Zimmerman* v. *Goldberg* [1936], 277 Mich 134 sustained the discretionary power of the trial judge to exclude evidence of misdemeanors such as traffic convictions under MSA 27A.2158 but reversed him on the ground that a prior judicial admission of a party-opponent is admissible as a matter of right even though it be a misdemeanor if it is a guilty plea to a traffic violation charge arising out of the accident involved in the principal case. The other two cases cited, *Socony-Vacuum Oil Company* v. *Marvin* [1946], 313 Mich 528 and *Cebulak* v. *Lewis* [1948], 320 Mich 710, also concerned a similar prior judicial admission by a party-opponent. None of these cases involved the issue on appeal here, viz: collateral impeachment by cross-examination concerning the prior unrelated conviction of a traffic violation."

In a brief entitled "Brief of *Amicus Curiae* on the Admissibility of a Defendant's Driving Record for Purposes of Impeachment Pursuant to GCR 1963, 607," filed with permission of this Court, *Amicus Curiae,* after calling attention that questions of construction have constantly been raised in Michigan courts since the enactment of Rule 607, sets forth its interpretation:

"It was not the intent of the Rule 607 to place traffic offenses on the same level as other crimes or misdemeanors, and give the trial court the discretion, as suggested in *Taylor* v. *Walter, supra,* to admit all prior and subsequent traffic convictions to test a witness' credibility. *Van Goosen,* and the cases cited therein, make it clear, that a witness'

credibility is to be tested by offenses that truly test what manner of man he has been in the past, crimes involving intent or moral turpitude, 'antecedents which are really significant,' as described by Judge Campbell, and not by traffic convictions.

"Rule 607 should be limited in scope to cross-examination for convictions of crimes involving moral turpitude. Admission of prior or subsequent traffic convictions and suspensions for the sole purpose of testing a witness' credibility in automobile negligence cases, particularly where a defendant has admitted traffic violations, is highly prejudicial and even when precautionary instructions are given the jury, they can only conclude that a defendant driver with that record must have been guilty of negligence in the accident in question.

"Even if a plaintiff is guilty of contributory negligence, it would be difficult for a jury to permit a defendant driver with a long record of convictions and suspensions to escape responsibility.

"In this connection, the language quoted by Judge Levin in *Paratore* v. *Furst* [(1969), 15 Mich App 568], is appropriate:

"'*  *  *  Furthermore experience teaches us that juries cannot be depended upon to remove from their conscious and subconscious thinking processes prejudicial facts just because they have been instructed to do so.  *  *  *'

"Even stronger language was contained in an opinion of Justice Jackson in *Krulewitch* v. *United States* [1949], 336 US 440, 453, 93 L Ed 790, 69 S Ct 716:

"'The naive assumption that prejudicial effects can be overcome by instructions to the jury  *  *  *  all practicing lawyers know to be unmitigated fiction.'"

## LEGISLATIVE AND JUDICIAL HISTORY

For the 14 years preceding our 1964 *Perin* v. *Peuler* decision (373 Mich 531) and our enactment

of GCR 1963, 607, the legislative mandate decided disputes such as are presented in this appeal.

The 1949 legislature by a 26 to 0 vote in the Senate and a 79 to 0 vote in the House, enacted PA 1949, No 300, known as the Michigan vehicle code. Section 731 thereof provided:

"No evidence of the conviction of any person for any violation of this chapter shall be admissible in any court in any civil action."

Four years later the legislature, by a vote of 28 to 1 in the Senate and 69 to 3 in the House, amended this section by PA 1953, No 60, to read:

"No evidence of the conviction of any person for any violation of this chapter or of a local ordinance pertaining to the use of motor vehicles shall be admissible in any court in any civil action." (MCLA § 257.731; Stat Ann 1968 Rev § 9.2431.)

No one challenged in our Court either the legislative right to pass such an enactment or the provisions of the enactment until another seven years had elapsed and we were called upon to decide *Elliott* v. *A. J. Smith Contracting Company, Inc.* (1960), 358 Mich 398.

In that case the owner of a truck was sued because a five-year-old boy darted across the highway into the left rear wheel of the truck and was killed. The truck was being driven by an employee. Defendant-owner, as appellant, claimed that the admission of evidence of the driver's past driving record violated the above-mentioned legislative enactment.

In holding the evidence was proper and in proving defendant-owner's personal negligence (p 414) "in entrusting the operation of a truck to a person totally incompetent to handle it," the majority opinion (five signatures) cited our 1933 opinion in *Tanis* v.

*Eding*, 265 Mich 94,[3] and in referring to the statute, stated (pp 413–415):

"The principal evils sought to be cured by the statute arise in this way: A driver has been convicted of a criminal offense in connection with a traffic accident. In addition, he is sued civilly with respect to the same accident. There is a danger that the civil jury might, if permitted, consider the criminal conviction as evidence of negligence in the civil action, or, in civil cases, that negligence in a prior case will be regarded as evidence of negligence in a later case. These, principally, are what the statute seeks to prevent. 3 Wigmore, Evidence (3d ed), § 987.

"We do not have such a case. Here the suit is brought not against the driver himself but against his employer on a totally different theory: his personal negligence in entrusting the operation of a truck to a person totally incompetent to handle it.
\* \* \*

"The statute does not in terms prevent showing such a record for such purpose and we are not inclined to make out of it a shelter for the unfit, and worse, who are entrusted with powerful trucks in which to roam the highways of this State."

---

[3] This case presents the question whether defendant could be held liable for negligence of one who borrowed his car but who was not an agent or servant of the defendant, and, in ruling under the entrustment theory that the defendant could be held liable, our Court stated (pp 96–97):

"The precise question is new in this State. The overwhelming weight of authority supports the following:

" 'The general rule that an owner of an automobile is not liable for the negligence of one to whom the automobile is loaned has no application in cases where the owner lends the automobile to another, knowing that the latter is an incompetent, reckless, or careless driver, and likely to cause injuries to others in the use of the automobile; in such cases the owner is held liable for injuries caused by the borrower's negligence on the ground of his personal negligence in intrusting the automobile to a person who he knows is apt to cause injuries to another in its use.' 36 ALR 1148.

"See, also 42 CJ p 1078; 68 ALR 1013, Babbitt on Motor Vehicle Law (4th Ed.), § 1315.

"The rule is sound and is applicable here."

The minority opinion (three signatures) dissenting, stated (pp 404, 405):

"The statute is clear and explicit. The question for the jury was whether at the time of the accident defendant's driver was operating the truck as a reasonable, prudent man would operate it. Allowing testimony contrary to the express legislative prohibition was prejudicial to defendant."

The statute next received our consideration in *Perin* v. *Peuler* (Feb 1963), 369 Mich 242. In this case, plaintiff, a passenger, suffered injuries when the car in which she was riding collided with one owned by defendant Henry Peuler, Sr., and operated by defendant Henry J. Peuler, his minor son.

After the pretrial statement indicated that the pleadings were complete and the case was at issue, the plaintiff moved to amend her declaration to incorporate a specific charge of actionable negligence on the part of Peuler, Sr., defendant-owner, in entrusting his vehicle to a driver known by him to be incompetent by reason of his past bad record.

The trial court, citing the statute prohibiting proof of previous traffic violations, denied the motion because plaintiff had made not only the father, Henry Peuler, Sr., a party to the suit, but also his son, Henry J. Peuler.

The majority opinion (four signatures) cited our 1960 decision in *Elliott* v. *A. J. Smith Contracting Company, Inc., supra,* and, deciding that the trial court committed error in denying the motion to amend, stated (pp 245, 246):

"The problem arises when we consider the provisions of CLS 1956, § 257.731 (Stat Ann 1960 Rev § 9.2431), which reads as follows:

" 'No evidence of the conviction of any person for any violation of this chapter or of a local ordinance

pertaining to the use of motor vehicles shall be admissible in any court in any civil action.'

"Is the language of the statute so broad as to bar all evidence with regard to a driver's past actions? We think not. The statute directs itself to 'evidence of the conviction' and nothing further. Conviction implies, and, in fact, is *a judgment* with regard to an occurrence that has taken place. This is undoubtedly the reason for the statutory prohibition. However, *the facts* of past occurrences are not barred by the statute. Neither would the results flowing therefrom such as revocation of a driver's license, *Elliott v. A. J. Smith Contracting Co., Inc., supra,* but only 'evidence of the conviction.'

"Conceivably, a whole series of past accidents or other events might be shown if they were of such a nature as to lead to the conclusion that the son was unfit to be at the wheel and the father allowed him to drive, having knowledge that this was so. Liability under such a situation is no more unusual than the liability that might result from entrusting a car to a drunken man or a loaded pistol to an infant."

The minority opinion (three signatures), pointing out the difference between the present *Perin* case and the previous *Elliott* case because the driver was not included as a defendant in the *Elliott* case but was in the *Perin* case, concluded by stating (p 251):

"The legislative mandate [CLS 1956, § 257.731 (Stat Ann 1960 Rev § 9.2431)], using terms 'any person,' 'any court,' 'any civil action,' is very definite and very broad. Any change in this mandate should come from the legislature and not by judicial legislation. The trial court's denial of plaintiff's motion to amend did not constitute a failure to use discretion or an abuse of discretion."

Rehearing was granted and oral arguments were heard on July 17, 1963, and, on this Court's own

motion, a second rehearing was ordered and the third oral argument in this case was held April 9, 1964.

Once more the majority opinion (*Perin* v. *Peuler* [Sept 1964], 373 Mich 531) decided that the trial court had committed reversible error in denying plaintiff's motion to amend her declaration so as to include a count of negligent entrustment but, in so doing, it abandoned the two previous majority interpretations of the statute in *Elliott, supra,* and in the February 1963 *Perin* v. *Peuler* case, and held (p 540): " 'Conviction,' as employed in section 731, means, of course, conviction by a court charged with the duty of hearing and determining complaints for violation of the motor vehicle code or of local ordinances 'pertaining to the use of motor vehicles,' " and that such legislative enactment was an encroachment upon the prerogatives of this Court because (p 541):

"The function of enacting and amending judicial rules of practice and procedure has been committed exclusively to this Court (Const 1908, art 7, § 5; Const 1963, art 6, § 5); a function with which the legislature may not meddle or interfere save as the Court may acquiesce and adopt for retention at judicial will."

In this *Perin* v. *Peuler* opinion (p 543), the Court announced that it was considering with a view toward adoption the Court Rule which is in issue in this appeal.

### The Michigan Experience

The reference to credibility in the catchline or heading of GCR 1963, 607, and the language as to credibility in the footnote to *Perin* v. *Peuler* (373 Mich 531, 543), has led to an unfortunate result,

both with the bench and the bar of Michigan. Many lawyers and judges, without making a detailed and careful analysis of all four cases cited in Rule 607 blithely assume that the purpose of the Court Rule was to enlarge the rules of evidence to make it an independent basis for admission of all traffic convictions solely for the purpose of impeaching a witness' credibility.

It has almost become the practice on depositions and frequently at trials of automobile negligence cases not involving negligent entrustment, to inquire not only if the witness has been convicted of any felonies and misdemeanors, but to produce a certified copy of the Secretary of State's motor vehicle operator's record and take the witness through each speeding, passing, stop sign, et cetera, violation and conviction, citing Rule 607 as authority for impeaching the witness' credibility for conviction of a crime. No other authority or reason for bringing out the traffic offense is given other than perhaps MCLA § 600.2158 (Stat Ann 1962 Rev § 27A.2158), the statute which permits showing the conviction of a crime for the purpose of drawing in question the credibility of a witness, and Rule 607.

It had always been the practice under *Zimmerman* v. *Goldberg, supra,* and earlier cases, when questioning a witness about misdemeanors other than traffic offenses, to have a ruling invoking the court's discretion as to particular minor crimes, but, with the enactment of Rule 607, traffic offenses seem to have been elevated to a plane above ordinary misdemeanors to the point where court and counsel automatically admit traffic offenses to test credibility, without any thought as to whether they have any real probative value; whether they enable the jury to know what manner of man the witness is; whether they are otherwise admissible, as judicial admis-

sions, or impeach by proof of prior inconsistent statements.

To this we call attention to the fact that automobile negligence cases comprise a major segment of an overloaded court docket. In calendar year 1969, Wayne County's docket shows that 4,260 automobile negligence cases accounted for 39% of jury trials in that county; in Oakland County 1,136 automobile negligence cases constituted 36% of jury trials; in Genesee County 625 such cases represented 31% of its jury trials; in Macomb County 803 automobile negligences cases constituted 39% of the total jury trials, and in Ingham County 378 negligence cases were 38% of the jury trials. The survey of the entire state shows that the 9,579 automobile negligence cases for the calendar year 1969 constituted 30% of all jury trials.

## THE MAJORITY VIEW

Evidence of acts or incidents to establish a character or disposition of negligence is almost unanimously held to be improper. This thought is expressed in 29 Am Jur 2d, Evidence, § 316, p 362, as follows:

"Although the habit of doing a thing might seem naturally to have some probative value indicating that on a particular occasion the thing was done as usual, evidence of the general habits of a person is not, according to most courts, admissible for the purpose of showing the nature of his conduct upon a specific occasion. Accordingly, in actions for negligence the courts generally deny the admissibility of evidence of the reputation of the defendant for negligence, his habits of negligence, his habitual negligent conduct, etc., upon the issue of his negligence at the time of the injury complained of, especially where there are eyewitnesses who testify

to the actual facts concerning the accident or injury. Nor, as a general rule, is it competent for the defendant to show his own reputation for prudence, skill, or care, upon the issue of his care or negligence upon a particular occasion. The fact that the defendant is charged with wilful negligence does not change the rule that his general reputation for care is inadmissible."

The Handbook of the National Conference of Commissioners on Uniform State Laws (1953), Uniform Rules of Evidence, Rule 48, p 191, expresses it in these words:

*"Character Trait for Care or Skill—Inadmissible to Prove Quality of Conduct.* Evidence of a trait of a person's character with respect to care or skill is inadmissible as tending to prove the quality of his conduct on a specified occasion."

20 ALR2d 1217, under annotation "Cross-examination of automobile driver in civil action with respect to arrest or conviction for previous traffic offenses," states:

"Generally speaking, the courts have refused to permit the cross-examination of a driver in civil actions as to prior arrests or convictions for traffic offenses on the ground that the introduction of such evidence would lead to a consideration of collateral issues having no bearing on the question of the driver's negligence in the accident under consideration."

The same thoughts are also expressed in 1 Jones, Evidence (5th ed), § 190, p 331, 4 Callaghan's Michigan Pleading & Practice (2d ed, 1964), § 36.269, pp 187, 188; American Law Institute, Model Code of Evidence, chapter 4, Rule 306, pp 184, 185.

We have surveyed the ten most populous states of the Union as well as other states having statutes similar to Michigan's.

Our survey discloses that the New York, California, Florida, Utah, Arkansas, Colorado, Iowa, and Minnesota legislatures have enacted statutes either similar to the statute enacted by our Michigan legislature barring proof of previous motor vehicle convictions, or having the same effect.[4] When called upon, the courts of those states have enforced and have not repudiated those statutes.[5]

Our research further discloses that Illinois, Connecticut, Pennsylvania, Texas, New Jersey and Alabama prohibit the introduction of prior motor vehicle convictions to impeach credibility upon common-law principles.[6]

Of the ten most populous states, only Indiana unreservedly permits the introduction of traffic offenses to impeach a witness' credibility. *McMullen* v. *Cannon* (1958), 129 Ind App 11 (150 NE2d 765); *Andrews* v. *McNaughton* (1967), 141 Ind App 1 (226 NE2d 167).

In the case of *Ando* v. *Woodberry* (1960), 8 NY2d 165 (203 NYS2d 74, 168 NE2d 520), the Court of

[4] New York: *Vehicle and Traffic Law*, § 155; California: *Vehicle Code*, §§ 40832, 40834; Florida: *FSA* § 317.112; Utah: *UCA* §§ 41–6–170, 41–6–171; Arkansas: *ASA* §§ 75–1011, 75–1012; Colorado: *CRS* (1963), §§ 13–5–137, 13–5–138; Iowa: *ICA* §§ 321.489, 321.490; Minnesota: *MSA* § 169.94.

[5] *Ando* v. *Woodberry* (1960), 8 NY2d 165 (203 NYS2d 74, 168 NE2d 520); *Shmatovich* v. *New Sonoma Creamery* (1960), 187 Cal App 2d 342, 344, 345 (9 Cal Rptr 630); *Rousseau* v. *West Coast Housemovers* (1967), 256 Cal App 2d 878 (64 Cal Rptr 655); *Dixie Culvert Manufacturing Company* v. *Richardson* (1951), 218 Ark 427 (236 SW2d 713); *Garver* v. *Utyesonich* (1962), 235 Ark 33 (356 SW2d 744); *Book* v. *Datema* (1964), 256 Iowa 1330 (131 NW2d 470); *Warren* v. *Marsh* (1943), 215 Minn 615 (11 NW2d 528); *Souden* v. *Johnson* (1963), 267 Minn 151 (125 NW2d 742).

[6] *Lingle* v. *Bulfer* (1926), 322 Ill 606, 611 (153 NE 589); *Heating Acceptance Corporation* v. *Patterson* (1965), 152 Conn 467 (208 A2d 341); *Loughner* v. *Schmelzer* (1966), 421 Pa 283 (218 A2d 768); *Keough* v. *Republic Fuel and Burner Co., Inc.* (1955), 382 Pa 593 (116 A2d 671); *Compton* v. *Jay* (Tex, 1965), 389 SW2d 639; *Huff* v. *C. W. Goddard Coal and Supply Company* (1930), 106 NJL 19 (148 A 175); *Dean* v. *Johnston* (1968), 281 Ala 602 (206 So 2d 610).

Appeals of New York considered plaintiff's (a motorcycle policeman) claim for damages for injuries received in a collision with defendant's automobile; defendant's driver was given a summons which charged him with failing to make a proper turn and failing to signal before turning, and he subsequently pled guilty to both charges; plaintiff attempted to prove defendant driver's plea of guilty in the traffic court on the theory that it constituted an admission, but upon defendants' objection the trial court excluded the proffered evidence. The jury returned a verdict in favor of defendants and the Appellate Division (two justices dissenting) affirmed the judgment subsequently rendered.

The Court of Appeals, in reversing the Appellate Division and ordering a new trial, stated (pp 168, 169):

"[W]hen [defendant-driver] pleaded guilty to the traffic infractions charged against him, his plea of guilty amounted to a statement or admission by him that he did the act charged. As such, it should be treated like any other admission or confession, and subject to the same rules relating to its weight and effect. * * *

"Whatever else this provision [the statute] may mean, it is clear that it is directed solely against the use of a conviction of a traffic infraction to 'affect or impair * * * credibility as a witness' of the person convicted and not against the use of a plea as evidence in chief. The statute does no more than restate the rule of the common law that a prior conviction may be shown to attack the credibility of a witness only if it was a conviction of a *crime.* * * *

"The legislation simply represented a recognition of the fact that most traffic violations do not involve the degree of moral turpitude associated with crime." (Emphasis in original.)

We quote from the Supreme Court of Pennsylvania's decision in *Loughner* v. *Schmelzer* (1966), 421 Pa 283, 284–286 (218 A2d 768):

"The sole question in this case is a narrow one. In an action of trespass for damages resulting from a collision of two automobiles is it a reversible error to admit, over plaintiffs' objection, evidence that the plaintiff was convicted before the Quarter Sessions Court of a violation of The Vehicle Code * * * ?

" '* * * we recognize a valid existing distinction in cases involving the record of conviction of relatively minor matters such as traffic violations, lesser misdemeanors, and matters of like import. Especially in traffic violations, expediency and convenience, rather than guilt, often control the defendant's "trial technique" * * * . Compare also the effect given in Pennsylvania to a plea of nolo contendere.' * * *

"We have held that an important distinction exists between traffic violations and lesser misdemeanors on the one hand and felonies and their consequences on the other hand. * * *

"Our conclusion is strengthened by The Vehicle Code, § 1211, supra, which prohibits the introduction in future civil actions of pleas of guilty and pleas of nolo contendere, or payment of fines in summary conviction cases. We see no valid distinction between a guilty plea and a verdict of guilty in summary conviction cases. In short, we hold that the evidence of plaintiff's conviction of a violation of The Vehicle Code was inadmissible in this civil action."

Further, the Minnesota Supreme Court, in commenting upon a statute very similar to ours, in *Warren* v. *Marsh* (1943), 215 Minn 615, 621, 622 (11 NW2d 528), stated:

"It is a matter of common knowledge, and was so at the time of the enactment of the statute in question, that often citizens will plead guilty to minor offenses under the traffic act rather than suffer loss of valuable time and the expense of a trial. Most of the violations under the act, including the charge placed against plaintiff, are merely misdemeanors and are *mala prohibita* and not *mala se*. No moral turpitude is involved. Intention to commit a crime is not an ingredient of the offense. Because of that fact, drivers more readily plead guilty when payment of only a small fine is involved and when a conviction is generally not considered a reflection on one's character. Aware, no doubt of these circumstances and also of the frequent occurrence of procedure similar to that disclosed in the instant case, the legislature apparently concluded that a plea of guilty should not prejudice one in any way in any civil proceeding, even one involving the same facts out of which the violation of the traffic act arose. Moreover, distinctly different issues arise in the civil case. The issues of negligence, contributory negligence, and the proximate relation of the violation of the statute to the accident are not involved in the criminal proceeding, whereas they are important issues in the civil case."

The superior reasoning of these cases, buttressed by our history and experience in Michigan, leads us to conclude that Michigan should no longer remain in the minority.

CONCLUSION

We affirm the Court of Appeals and the circuit court. In so doing, it is apparent that reconsideration must be given to GCR 1963, 607, in order to give a definite pronouncement as to what extent, if any, proof of previous convictions can be introduced

in determining automobile negligence and other civil cases.

T. E. Brennan, C. J., and Dethmers, J., concurred with Kelly, J.

T. G. Kavanagh, J., did not sit in this case.