## NIEDZINSKI v. CORYELL.

1. NEGLIGENCE—PLEADING—ELIMINATION OF CHARGE NOT SUPPORTED BY EVIDENCE.

In an action for damages to plaintiff and his bicycle when he was run down by defendant's automobile, driven by his son, while plaintiff was riding on a public street, where the charge of excessive speed was not supported

On liability for collision of automobile with bicyclist, see note in 28 L. R. A. (N. S.) 944.

by evidence, the trial court properly eliminated said question from the consideration of the jury.

2. SAME — PLEADING — SUFFICIENCY — ERRORS IN DECLARATION — EFFECT.

Although the declaration carelessly charged that negligence "constituted" in failing to turn out to the left and pass plaintiff, instead of using the word "consisted," as in the form prescribed in the new rules of the court promulgated pursuant to the judicature act, and also by a clerical error cited the wrong section of the compiled laws applicable, where no one would be misled by said inaccuracies or fail to understand the negligence charged, they will not be regarded as fatal.

3. SAME—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.

Where plaintiff testified that he was riding near the center of the street, that there was room for defendant's car, going in the same direction, to pass him on either side, and that he did not swerve to the left, as claimed by defendant, the court properly refused to direct a verdict for defendant on the ground that plaintiff was guilty of contributory negligence in turning to the left, although, on cross-examination, in answer to the question as to which side the automobile would be required to pass him on, he answered, "on the right side."

4. SAME—MOTOR VEHICLE LAW—LAW OF ROAD.

While a bicycle is a vehicle, it is not the kind of vehicle mentioned in the motor vehicle law, and therefore the provisions of said statute are not applicable, but this case is governed by the law of the road.

5. SAME—LAW OF ROAD—DUTY OF ONE PASSING.

Where plaintiff was riding his bicycle near the middle of the street, even if he was "wobbling along," as claimed by defendant, it was the duty of the driver of the automobile approaching from the rear, in passing plaintiff, to exercise that degree of care to avoid an accident commensurate with such situation.

6. SAME—EVIDENCE—PREVIOUS OFFENSES—WITNESSES — CREDIBILITY.

Testimony by defendant's son, the driver of the automobile, who was a witness in defendant's behalf, that he had previously been arrested and convicted three times

for fast driving was admissible for the purpose of testing his credibility.

7. APPEAL AND ERROR—ARGUMENT OF COUNSEL—CURING ERROR.

Comment by plaintiff's counsel, in his argument to the jury, on the fact of defendant's son's previous arrest and conviction, when he was cut short by objection by defendant's counsel, *held* not reversible error, where the court fully and correctly instructed the jury that the fact that the son had been previously arrested and convicted was no evidence of his guilt in this case, and that it could be considered by them only as bearing on his credibility as a witness.

8. SAME—INSTRUCTIONS—ISSUES PRESENTED.

Where the court repeatedly charged the jury that the only issue for them to decide was whether the plaintiff unexpectedly swerved to the left and by such negligent act caused or contributed to the accident, there was no reversible error in the charge, although in certain parts the court seemed to entertain the view, urged at times by both parties, that statutory rights and duties were involved.

9. NEGLIGENCE—NEW TRIAL—WEIGHT OF EVIDENCE.

The finding and conclusion of the court that the verdict of the jury in favor of plaintiff was not against the overwhelming weight of the evidence, *held*, supported by the record.

10. APPEAL AND ERROR—MISCARRIAGE OF JUSTICE.

Where, on examination of the entire record, it cannot be said that it affirmatively appears that the errors complained of resulted in a miscarriage of justice, the judgment will be affirmed.

Error to Bay; Houghton (Samuel G.), J. Submitted April 6, 1921. (Docket No. 16.) Decided October 3, 1921. Rehearing denied November 3, 1921.

Case by Barney Niedzinski against Charles Coryell for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*M. L. Courtright,* for appellant.

*Collins & Thompson,* for appellee.

STEERE, C. J.   At about 6 o'clock in the evening of October 27, 1917, Harry Coryell, son of defendant, was driving his father's Cadillac touring car, with the latter's knowledge and consent, south along Washington avenue in the city of Bay City returning with three companions from attending a foot-ball game, when he came into collision with plaintiff who was riding a bicycle down the avenue in the same direction, injuring plaintiff and damaging his bicycle, to just what extent is in controversy.   This action was brought in the Bay county circuit court to recover damages from defendant as owner of the automobile.   Plaintiff had verdict and judgment in the sum of $645.   Washington avenue is a main thoroughfare of Bay City extending through it centrally in a northerly and southerly direction past the city hall, nearly in front of which the accident occurred.   Through that part of the city are double railway tracks along the avenue and it is paved 40 feet wide between curbs.   At the time of the accident it was raining some and daylight fading.

Plaintiff was a coal miner and had worked that day until 4 o'clock when he went home, fed his chickens, etc., and shortly before 6 went down town on his bicycle to get some meat and a pair of shoes with which he was returning home when the accident befell him. He testified he was going south on his bicycle some 3 or 4 feet distant from the west rail of the west street car track; that the street was all clear of traffic in that locality and as he rode along he heard an automobile coming behind him from the north giving him the impression that it was coming fast, but the road was clear and he did not turn around to look and did not know how fast; that he kept going straight along without changing his course because he saw that the automobile had plenty of room to pass him on either side; that it struck his bicycle in the rear, threw him

down, severely injuring him and the bicycle.    The evidence appears to be undisputed that the rear end of the bicycle was wrecked and the front practically uninjured.

The testimony of defendant's son is that he saw plaintiff when 75 feet away riding his bicycle down the street ahead of him about half way between the west track and the curb; that he appeared to be "wobbling along a little" when he first saw him, was carrying a bundle in one hand and steering his bicycle with the other, "going down rather crooked" and said of the accident:

"I saw him turn to the left and I went right by and he actually ran right into me in the front fender, whereby it threw him right down and the boys that were with me didn't know anything of the kind that I hit this man, and I got out and picked him up, and we walked into the police station, and they took his name and from there I took him home.

"Q. Did you run into him?

"A. No, he actually ran into me.

"Q. Did it become necessary for him to turn the bicycle toward the street car track?

"A. Yes, he turned the bicycle toward the street car track.    *    *    *

"Q. What did you do?

"A. I made a violent—I made an attempt to avoid the accident.

"Q. By what doing?

"A. By turning to run that much farther east.

"Q. Where did his bicycle hit the automobile?

"A. Why, just exactly in front of the city hall."

He further said that as they picked plaintiff up and helped him into the city hall he appeared to have been drinking.    Plaintiff denied that he swerved his bicycle either way or that he had been drinking.

The negligence charged in plaintiff's declaration is "running said automobile at an excessive speed and in failing to turn out to the left to pass said plaintiff,"

concluding, "wherefore plaintiff claims a judgment in the sum of $2,000 in accordance with the provisions of section 4925 of the Compiled Laws of the State of Michigan of 1915."

A motion was made at the close of plaintiff's testimony for a directed verdict which was denied, and later a motion was made for a new trial on various grounds, including the claim that the verdict was against the weight of evidence and excessive, which was also denied.

Defendant's 20 assignments of error are directed against the insufficiency of plaintiff's declaration, rulings of the court during the progress of the trial, refusal to direct a verdict for the defense and parts of the charge. Of the declaration defendant's counsel refers at length to Black's Law and Practice in Accident Cases for the essentials of a negligence declaration and point out that in scant phrases plaintiff's curt declaration simply alleges the two charged acts of negligence as "excessive speed," which he failed to prove, and "failure to turn out to the left in passing," without any allegations of duty or statement of facts and circumstances showing defendant owed any legal duty to plaintiff.

In defense of the brevity of their declaration plaintiff's counsel point out that it follows a form prescribed in the new rules of the court promulgated pursuant to the judicature act, the form selected as a model being entitled "Declaration for negligence in running train over crossing." That form appears on page 265 of Searl's Michigan Court Rules. The declaration follows the form in outline, with a series of concise, numbered paragraphs in similar phraseology, but this not being a crossing case the allegations of negligence are necessarily different and of counsel's own composing. It is indicated that in so doing counsel sought to fit their charges to the motor vehicle law, both as

to speed and passing. Plaintiff did not see defendant's automobile until after the accident and could furnish no evidence as to its speed. Defendant's proof was that the car carefully kept within the 15 miles speed limit. The trial court directly and correctly took from the jury the question of excessive speed, which leaves the declaration stating in substance, as applied to the case submitted to the jury, that on the day in question plaintiff while in the exercise of due care was lawfully traveling along a designated highway on his bicycle when defendant's automobile, driven by his son, "was so carelessly managed by said operator" that it ran plaintiff down, severely injuring him and destroying his bicycle, and the particular act of carelessness or negligence "constituted in * * * failing to turn out to the left to pass said plaintiff." The carelessness of counsel in drafting the declaration is noted in a failure to follow the form adopted by substituting "constituted" for "consisted," and in the concluding paragraph citing section 4925, 1 Comp. Laws 1915, which is part of the drain law. The appropriate section of the motor vehicle law evidently intended is 4825 and this may be passed as a clerical error. We think no one would be misled by those inaccuracies or fail to understand that the negligence charged as cause of the accident was failure of the young man driving the passing auto to observe due care and turn aside according to the "law of the road" when passing plaintiff going in the same direction.

One of defendant's most strenuously argued assignments of error is refusal of the court to grant his motion for a directed verdict on the ground it conclusively appeared plaintiff's negligence caused the accident. In support of this it is pointed out that in reply to counsel's question on cross-examination, "Which side would the automobile be required to pass

you, do you know, if it wanted to pass," he said "On the right side." It is argued from this that plaintiff evidently expected the automobile to pass him on the right and he therefore swung to the left. That might be a legitimate argument to a jury on the issue of fact as to whether plaintiff did turn to the left. He testified that he did not do so, while defendant's evidence was that he did. He said he was riding near the center of the street, on the right side of the car track and continued to do so until the auto struck him; that to pass him on the left from its proper side of the street behind him the auto would have to cross the street car tracks; the street was clear and there was plenty of room to pass him on either side so he kept right on in his course. If he did, which was a question of fact, in the absence of any applicable statute or ordinance he was strictly within his rights and guilty of no negligence.

Apparently plaintiff was not the only one confused as to the law applicable to the situation. The arguments advanced and statements made by court and counsel during the trial indicate the then impression that provisions of the motor vehicle statute applied; but we are not dealing with a case involving vehicles meeting from opposite directions, or motor vehicles passing each other, or overtaking and desiring to pass "vehicles drawn by a horse or horses or other draft animals." While a bicycle is a vehicle it is not the kind of vehicle mentioned in the statute. When other vehicles meet or pass it both are to be governed by what is known as the rule or law of the road, which it may be noted has in many respects been followed by our statutes relative to automobiles.

Unquestionably a traveler may occupy and use any part of the highway he finds most convenient or agreeable when not needed by others whose rights are superior, and aside from special statutes automobiles

are subject to any existing general laws governing vehicles on public highways with no paramount rights. Long and universal customs for approaching, meeting and passing persons or vehicles on highways under varying conditions have in many particulars been so commonly observed as rules of safety and convenience that they are recognized by the courts as rules or laws of the road of legal import, and in effect have become part of the common or bench law of the country. Many of them have been adopted in statutes, some have not. The most familiar of these is to travel the right side of the road and keep to the right in meeting and passing. As the right side of the road is the same for those going in the same direction it is also recognized as the natural, commonly necessary and proper rule of the road for the rear traveler if he desires to pass to turn by at the left, but even that course demands extra caution to avoid vehicles coming from the opposite direction with the right of way on that side of the road. Of this it is said in 2 Elliott on Roads and Streets (3d Ed.), § 1084:

"Indeed, it is most common for the rear vehicle to pass the other on the left. The leading traveler is not bound to turn either to the one side or the other, if there is sufficient room to pass on either side. If there is not sufficient room it is said to be 'the duty of the foremost traveler to afford it, on request made, by yielding an equal share of the road, if that be adequate and practicable; if not, the object must be deferred till the parties arrive at ground more favorable to its accomplishment.' But it is, perhaps, doubtful if such duty can be deemed an absolute legal duty, and even if it should be so considered, the failure of the leading traveler to perform it by turning out to one side will not justify the other in purposely running into him or attempting to pass at all hazards. The only rule of general application that can be laid down is that he who attempts to pass another going in the same direction must do so in such manner as may be most convenient under the circumstances of the case,

and if negligent, and damage results to the person passed, the former must answer for it, unless the latter by his own carelessness or recklessness brought the disaster upon himself."

Of passing in the same direction it is remarked in Angell on Highways, p. 452:

"The law has been declared to be that a traveler may use the middle or either side of the road at his pleasure, and without being bound to turn aside for another traveling in the same direction, provided there be sufficient room to pass on the one hand or the other."

There was certainly room to pass on the one hand or the other in this case. The paved street was 40 feet between curbs and ahead of the approaching automobile only occupied by plaintiff on his bicycle, which lengthwise of the highway occupied no more space than would a pedestrian. If he was "wobbling along" half way between the west track and the curb when the driver of the auto saw him 75 feet away, the latter had a clear three-quarters of the entire street on the left available and it was his duty in passing to exercise that care to avoid an accident commensurate with such situation. Defendant's only claim of contributory negligence is that plaintiff swerved his bicycle to the left, or the wrong way, which is denied, presenting a question strictly within the province of the jury.

Prejudicial error is urged against the court allowing plaintiff to show young Coryell had been convicted of crimes on different occasions, without producing the records of such convictions, and comments thereon made by plaintiff's counsel in his argument to the jury. On cross-examination of this witness by plaintiff's counsel the following questions and answers were permitted against defendant's objections:

"Q. Have you ever been arrested and convicted of crime?

"*A.* Yes, sir.   *   *   *
"*Q.* How many times?
"*A.* Three times."

When overruling defendant's objections the court announced that the answers were admitted only as bearing on the witness' credibility.   After moving to strike out the testimony as incompetent and immaterial, defendant's counsel further interrogated the witness on the subject and showed that each of the three offenses for which he had been convicted on his plea of guilty, and fined, was driving an automobile at an unlawful speed.   In summing up plaintiff's counsel said, in answer to argument of defendant's counsel, as he claims:

"And we did not owe him any duty to go over to the right unless you sounded a signal and there is no proof you sounded any signal.   This young man three times convicted of violation of law didn't have any right to run us down, whether we were drunk or sober, or whether he was Charles Coryell's son or a king's son, and you cannot run us down"—

At this point defendant's counsel cut off the climax by interrupting with an exception, which the court granted, having previously stated that the jury would be instructed as to the application of evidence relative to the young man's former convictions.   This the court took pains to do, fully and correctly, emphasizing to the jury that the fact the young man "had previously been arrested and pleaded guilty to fast driving" was no evidence "he is guilty of negligence in this case," could not be considered by them for that purpose, was only permitted in evidence as bearing on the witness' credibility, etc., particularly cautioning them against being influenced by consideration of the rank of parties or yielding to any impulses of revenge, sympathy, etc.   The testimony objected to was admissible for the purpose stated.   The jury was properly cautioned by

the court.     We find no reversible error in what occurred.

The court's charge is rather lengthy and something of a dissertation on the motor vehicle law, containing in parts matter not strictly applicable.     Counsel for defendant assigns error on numerous excerpts which standing alone seem somewhat inappropriate and questionable, indicating the court viewed the negligence, if any, as statutory.     Most matters complained of when read with the charge as a whole cannot be taken seriously.

Counsel emphasizes and argues as a "very material error" the following:

"Now if one person approaches another and desires to go by he is required to make it known to the other that he is there.     The statute provides that he shall blow a horn or bell, or whistle or some sort of sound as that is referred to, but the law is to this effect, that if one person overtakes another he must in some manner inform the other of his presence and that he wishes to pass, if he so desires."

As before noted, the matter of statutory duties and rights of the parties seems to have been at times urged by both parties.     Defendant's counsel was insistent on plaintiff's duty to turn to the right on ascertaining the automobile was approaching from the rear.     He was informed and did know of its approach, as he testified, and expected it to pass, but if his version is true there was abundant room to pass on either side and he kept his course.

This discussion of that subject by the court finds an excuse in defendant's insistence that it was plaintiff's duty to turn to the right; but at conclusion of the protracted charge, on defendant's counsel asking, "Do I understand your honor instructs the jury that it was the duty of Harry Coryell to give some signal of his approach if he desired to pass?"     The court replied, "No, I did not say that, I didn't intend to, any way."

Regardless of the somewhat irrelevant dissertations complained of, a direct and distinct instruction runs through the charge, repeated more than once, that the only point, or issue in the case for the jury to decide was whether plaintiff unexpectedly swerved to the left and by such negligent act caused or contributed to the accident, reiterated near the conclusion of the charge, as follows:

"If the plaintiff was going in a straight course and was struck from behind squarely, then the driver of defendant's automobile would have been negligent, if that was the case. If he was turning (out?) around, as an ordinarily prudent, careful person would, and turning out sufficiently to pass, as an ordinarily prudent person would do, and the plaintiff swerved to the left and the accident happened, and the defendant not being negligent, if he was not negligent or did not do it differently from what an ordinarily prudent person would have done, then he would not be liable."

The claim of excessive speed being eliminated, the declaration stated a simple common-law cause of action for negligence, with a statutory right to recover against the owner of the automobile if negligence was proven which involved no issue of fact for the jury. The determining issue of fact left to the jury was simple, easy to understand, plainly stated in the charge and emphasized by repetition in varying language.

On the controlling issues of fact as to negligence and damages we are not prepared to condemn the verdict of the jury, or the findings and conclusion of the court that it was not against the overwhelming weight of evidence; nor upon an examination of the entire record hold that it affirmatively appears the errors complained of have resulted in a miscarriage of justice.

The judgment is affirmed.

MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.