1. This case should be reversed for the reasons stated in the opinion by BLACK, J., in *Taylor* v. *Walter* (1970), 384 Mich 114, 117–120.

DISSENTING OPINION

T. G. KAVANAGH, J.

2. CRIMINAL LAW—CRIME—WORDS AND PHRASES.

*A person commits a crime whenever he does an act which is prohibited by law, which act is punishable by fine, penalty, forfeiture or imprisonment.*

3. CRIMINAL LAW—CRIME—AUTOMOBILES—MICHIGAN VEHICLE CODE.

*Any violation of the Michigan Vehicle Code is expressly made a misdemeanor or a felony with punishment by fine or imprisonment, and hence, as a general proposition, is a crime.*

4. CRIMINAL LAW—CRIME—AUTOMOBILES—PROHIBITED LEFT TURN— WITNESSES—CREDIBILITY.

*The "crime" of making a prohibited left turn is not necessarily a "crime" which touches on the credibility of a witness.*

5. WITNESSES — CROSS-EXAMINATION — CREDIBILITY — PRIOR ARRESTS AND CONVICTIONS — DISCRETION.

*Cross-examination of a witness regarding prior arrests and convictions, to test his credibility, is within the trial judge's discretion (GCR 1963, 607).*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] No headnote.
[2] 21 Am Jur 2d, Criminal Law § 1.
[3] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 312–346.
[4] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 799–802.
[5, 6] 58 Am Jur, Witnesses § 754 *et seq.*

6. WITNESSES—CROSS-EXAMINATION—DRIVING RECORD—DISCRETION.
*Trial court did not err in sustaining objection to cross-examination of a witness' driving record as it is discretionary with the trial court whether or not evidence of unrelated traffic violations is admissible (GCR 1963, 607).*

Appeal from Court of Appeals, Division 1, Levin, P. J., and T. G. Kavanagh and Newblatt, JJ., affirming Wayne, Neal Fitzgerald, J. Submitted May 6, 1970. (No. 9 April Term 1970, Docket No. 52,327.) Decided October 6, 1970. Submitted on rehearing June 10, 1971. (No. 16 June Term 1971, Docket No. 52,327.) Decided August 27, 1971.

15 Mich App 361 reversed.

Complaint by James W. Taylor against Rudi Walter for personal injuries sustained when defendant's automobile struck him. Verdict and judgment for defendant. Plaintiff appealed to the Court of Appeals. Affirmed. Plaintiff appeals. Affirmed by an equally divided Court, 384 Mich 114. Rehearing granted. Reversed and remanded.

*Albert Lopatin (Norman L. Zemke, P.C.,* of counsel), for plaintiff.

*Roy P. Nelson,* for defendant.

ON REHEARING

BLACK, J. *(for reversal and remand).* Further writing would amount to mere expatiation. I adhere to my original opinion (384 Mich 114, 117–120) and vote again in accordance therewith.

T. M. KAVANAGH, C. J., and ADAMS, and SWAINSON, JJ., concurred with BLACK, J.

WILLIAMS, J. (*for reversal and remand*). I concur with Justice Black without passing on "Professor McCormick's 'undue prejudice' test." I agree that no discretion was exercised.

T. G. KAVANAGH, J. (*dissenting*). The Court of Appeals affirmed the circuit judge's refusal to permit the cross-examination of the defendant on his driving record to test his credibility after he denied he had ever been arrested or convicted of a crime.

On appeal to this Court that decision of the Court of Appeals was affirmed[1] by an evenly divided Court, the writer having disqualified himself on account of his participation in the Court of Appeals decision.

Because of the frequency with which the issue recurs, however, it was the judgment of this Court that the matter should be resubmitted for consideration by the full bench in the hope that authoritative, definitive resolution of the question involved would assist the bench and bar.

In his opinion for reversal, 384 Mich 114 at 117, Mr. Justice BLACK set forth that portion of the trial transcript containing the cross-examination, colloquy and ruling giving rise to the issue in this suit.

An examination of it shows that no offer of proof or separate record was made. In such circumstance this Court usually makes short shrift of an appellant's assertion of error in the excluding of evidence, GCR 1963, 604.

Nonetheless we granted leave to rule on the question, so rule we shall.

Our late Brother KELLY's opinion for affirmance[2] meticulously and cogently treated of the issue and

---

[1] (1970), 384 Mich 114.
[2] (1970), 384 Mich 114, beginning at 121.

gave in detail the Michigan experience in dealing with the problem. No purpose is to be served by repeating the points he made.

The trial judge held that making a prohibited left turn is not a "crime". As a general statement taken out of context this is clearly wrong, for "Whenever a person does an act which is prohibited by law, which act is punishable by fine, penalty, forefeiture or imprisonment, he commits a crime." *People* v. *Hanrahan* (1889), 75 Mich 611, at 620. Thus, as a general proposition, any violation of the Michigan Vehicle Code is expressly made a misdemeanor or a felony with punishment by fine or imprisonment, and hence within the foregoing definition, a crime.

This is not to say that the trial judge erred in applying the law, or that in context his remark was wrong, however, for the "crime" of making a prohibited left turn is not necessarily a "crime" which touches on his credibility.

Thus, in context, his ruling was tantamount to saying that "Conviction of petty crimes or misdemeanors may be shown, in the discretion of the trial judge, for the purpose of testing credibility, but in my view it is too prejudicial to the defendant here to permit you to show his conviction of a prohibited turn."

In *Sting* v. *Davis* (1971), 384 Mich 608, a majority of this Court subscribed to the dictum that under GCR 1963, 607 "a trial judge has no discretion to exclude cross-examination with regard to the driving history of a plaintiff driver or a defendant driver, such cross-examination being proper to test the credibility of the witness' testimony with regard to the central fact issue in the case."

This clearly would be an extension of the court rule as written, for neither in the language of the rule itself nor the four cases cited therein, *viz. Van*

*Goosen* v. *Barlum* (1921), 214 Mich 595; *Zimmerman* v. *Goldberg* (1936), 277 Mich 134; *Socony Vacuum Oil Co.* v. *Marvin* (1946), 313 Mich 528; *Cebulak* v. *Lewis* (1948), 320 Mich 710 was the discretion of the trial judge so limited.

In *Van Goosen, supra,* the Court said (p 599):

"3. Defendant, while on the witness stand, was interrogated as to the number of times he had been arrested and convicted. This is complained of as error. Defendant was asking the jury to believe his version of the accident. In determining the weight to be given to his testimony they had a right to know what manner of man he had been in the past. These questions had a tendency to elicit the information and were proper. *Leland* v. *Kauth* [1882], 47 Mich 508; *Pratt* v. *Wickham* [1903], 133 Mich 356; *Lunde* v. *Railway* [1913], 177 Mich 374; *People* v. *Cutler* [1917], 197 Mich 6; *People* v. *LaLonde* [1917], 197 Mich 76."

In *Zimmerman, supra,* the Court said (pp 136, 137):

"Notwithstanding the contention of plaintiff's attorney that this testimony was material in that it had a bearing on defendant's credibility, the trial court struck it from the record. Appellant asserts this ruling of the trial court constituted prejudicial error. It is a fair inference from the record that the trial judge was of the opinion that since defendant's conviction was not of a *crime,* but rather a misdemeanor, that therefore the testimony concerning such conviction did not bear materially upon his credibility. The statute which the trial judge had in mind provides in part that "conviction of *crime* may be shown for the purpose of drawing in question the credibility of such witness." 3 Comp. Laws 1929, § 14217. Notwithstanding the statutory provision, it has long been established law in this State that it is within the discretion of a trial judge to permit a witness to be cross-examined as to his having been

convicted of a misdemeanor. *Van Goosen* v. *Barlum* [1921], 214 Mich 595; *Niedzinski* v. *Coryell* [1921], 215 Mich 498.

"In the instant case it must be borne in mind that the cross-examination of defendant was not one pertaining to a collateral matter and bearing only upon his credibility. Instead it was cross-examination concerning defendant's plea of guilty to a charge of reckless driving arising out of the very accident involved in the principal case. *Excluding such cross-examination or striking the testimony from the record was error under the circumstances.*" (Emphasis added.)

In *Socony Vacuum Oil Co.* v. *Marvin, supra,* the Court commented on the *Zimmerman* case saying (p 537):

"Following comment on the general rule that a witness may be cross-examined as to prior convictions for the purpose of impeaching his credibility, it was said:

"'In the instant case it must be borne in mind that the cross-examination of defendant was not one pertaining to a collateral matter and bearing only upon his credibility. Instead it was cross-examination concerning defendant's plea of guilty to a charge of reckless driving arising out of the very accident involved in the principal case. Excluding such cross-examination or striking the testimony from the record was error under the circumstances. Especially is this true since in this case the defendant had testified in his own behalf and his testimony in effect was a denial of reckless driving. As just above indicated, we think it was not within the discretion of the trial judge to limit defendant's cross-examination by striking this testimony from the record; but instead this ruling constituted error which, except for the reason hereinafter indicated, would have been prejudicial and necessitated reversal.'"

In *Cebulak v. Lewis, supra,* the Court said (p 728):

"4. The trial court permitted cross-examination of Betty Lewis as to whether she had been charged with failing to yield the right of way to a pedestrian, as a result of the accident. She admitted having received two traffic tickets, one for failing to yield the right of way and one for not having a driver's license. She admitted over defendants' objection that her father 'took it (the ticket) down and paid the fine.' Doubtless counsel for the defendants made too much showing of importance of this matter before the jury. However, it was not error to permit the cross-examination. *Zimmerman v. Goldberg* [1936], 277 Mich 134; *Socony Vacuum Oil Co.* v. *Marvin* [1946], 313 Mich 528."

Thus in *Van Goosen, Socony* and *Cebulak* it was held no error to *permit* cross-examination regarding arrests and conviction of crime, and in *Zimmerman* while expressly affirming that it has "long been established law in this State that it is within the discretion of a trial judge to permit a witness to be cross-examined as to his having been convicted of a misdemeanor" the Court held it was error to *exclude* "cross-examination concerning defendant's plea of guilty to a charge of reckless driving arising out of the very accident involved in the principal case."

Since GCR 1963, 607 provides that the rules of evidence approved in those cases and "reenacted by PA 1961, No 236" it would appear that the present rule is that a witness may be cross-examined, to test his credibility, regarding prior arrests and convictions, within the trial judge's discretion.

See 3A Wigmore, Evidence, § 987 (Chadbourn rev. 1970). In a footnote to this section the author has exhaustively catalogued the authorities of many jurisdictions including Michigan. It is apparent

from the cases cited that the rule vesting discretion in the trial judge has almost invariably been followed in Michigan.

The ratiocination behind the rule was set forth in *Wilbur* v. *Flood* (1867), 16 Mich 40, wherein Justice Campbell wrote (pp 43, 44):

"Defendant was sworn as a witness in his own behalf, and controverted the plaintiff's case. Upon cross-examination he was allowed, against objection, to be asked whether he was ever confined in the state prison, and an exception is taken to this ruling. It is claimed to have been erroneous, as an attempt to discredit the witness by improper means, and to prove by parol what rests in record evidence. We do not think the objection tenable. It has always been found necessary to allow witnesses to be cross-examined, not only upon the facts involved in the issue, but also upon such collateral matters as may enable the jury to appreciate their fairness and reliability. To this end a large latitude has been given, where circumstances seemed to justify it, in allowing a full inquiry into the history of witnesses, and into many other things tending to illustrate their true character. This may be useful in enabling the court or jury to comprehend just what sort of person they are called upon to believe, and such a knowledge is often very desirable. It may be quite as necessary, especially where strange or suspicious witnesses are brought forward, to enable counsel to extract from them the whole truth on the merits. It cannot be doubted that a previous criminal experience will depreciate the credit of a witness to a greater or less extent, in the judgment of all persons, and there must be some means of reaching this history. The rules of law do not allow specific acts of misconduct, or specific facts of a disgraceful character, to be proved against a witness by others. He may be proved by record evidence to have been convicted of infamous crimes, but not to have done other infamous deeds, nor to have undergone personal dis-

grace. And even as to previous conviction of infamous crimes, the rule is seldom of any great service, because no one can be expected to know in advance what witnesses may appear, nor what may have been their history. Unless the remedy is found in cross-examination, it is practically of no account.

"It has always been held, that within reasonable limits a witness may, on cross-examination, be very thoroughly sifted upon his character and antecedents. The court has a discretion as to how far propriety will allow this to be done in a given case, and will, or should, prevent any needless or wanton abuse of the power. But within this discretion we think a witness may be asked concerning all antecedents which are really significant, and which will explain his credibility, and it is certain that proof of punishment in a state prison may be an important fact for this purpose. And it is not very easy to conceive why this knowledge may not be as properly derived from the witness as from other sources. He must be better acquainted than others with his own history, and is under no temptation to make his own case worse than truth will warrant. There can with him be no mistakes of identity. If there are extenuating circumstances, no one else can so readily recall them. We think the case comes within the well established rules of cross-examination, and that the few authorities which seem to doubt it have been misunderstood, or else have been based upon a fallacious course of reasoning, which would, in nine cases out of ten, prevent an honest witness from obtaining better credit than an abandoned ruffian."

There are some of us who feel for varying reasons the rule should be re-examined.

Until we do so we owe it to the profession to state what the rule is and insist on its observance.

For this reason the decision of the trial judge here and the Court of Appeals should be affirmed and costs awarded to the appellee.

T. E. BRENNAN, J. (*dissenting*): If the young people of today, who think that they are the only ones who criticize public officials with candor, would like an example of an old pro, speaking his mind, albeit with utmost courtesy, the oral argument for appellee in this case, by Mr. Roy Nelson of the Detroit Bar could be read with profit.

Mr. Nelson spoke without a prepared text, which accounts for the occasional false starts and grammatical miscues. The substance, however, is faultless. I adopt it as my dissent.

*"Mr. Nelson:* Members of the Court, my name is Roy Nelson, and I represent the defendant, and I might ask the same question, 'Why am I here?' I feel like the fellow who says I got two chances, slim and none, and slim is out of town. But notwithstanding, I read the *Sting*[1] case, and I will be frank to say I cannot understand it. It isn't very often that you come before a tribunal like this, and know you are going to get beat before you come, so what have I got to lose. I feel this way. I read the decision of Justice BLACK, who dissented in the previous case. I read the *Sting* case. I think there are several things that are different in this case, as distinguished from the *Sting* case. One, the Court, I am sure, has still fresh memories of the *Sting* case. The *Sting* case involved cross-examination which was permitted concerning the driving record, and the defendant took exception to it, and he objected to it, and the court permitted cross-examination. The question then was, 'Was this an abuse of discretion on the part of the trial court in permitting cross-examination of the driving record?' That was the *Sting* case. The *Taylor* case, which is now before this Court, was a case where the cross-examination was objected to by me, and the trial court sustained it. Now the question is, 'Was this an abuse of discretion, in refusing to permit examination of driving record?'

---

[1] *Sting* v. *Davis* (1971), 384 Mich 608.

Entirely different.  The third issue, which distinguishes this case materially from the *Sting* case, is there is no evidence in this record; there was no evidence in the trial court that the defendant had any driving record at all.  The only way the driving record appears in this Appendix is by Mr. Lopatin waving a sheet of paper in front of the trial judge when he made a motion for a new trial and said, 'this is the driving record.'  That's where it got in.  So I think there is a lot of difference between the *Sting* case and this case.

"I like to refer first of all to Justice BLACK's opinion when this case was here before.[2]  It isn't often that I get a chance to come back and say, 'Why did you say this?'  Maybe it takes a lot of audacity, but I think I have known Justice BLACK for a long enough time, that I think that he doesn't mind another fellow differing with him.

"Justice BLACK: Not at all.  Not at all.

*"Mr. Nelson:*  He spent most of his life differing.

"I raised in my brief the question of making a separate record.  If you want to preserve your right to appeal, show there is prejudice.  Mr. Lopatin made no separate record.  He made no offer of any driving record in the lower court.  I raised this question under Rule 604.  I said, 'What about it?' Justice BLACK never mentioned anything about it in his opinion.  But since that time, the case was just mentioned here today, by Mr., I think it was in the first case argued, a malpractice case, the *Henson*[3] case.  This Court was pretty strong and unanimous in how to preserve a record for appeal. If you claim that you are prejudiced by denial of right of cross-examnation or a denial of right to introduce evidence then make a separate record so we can show to this Court that it has been prejudicial. That was not done in this case.  And if it wasn't done in this case, how can you, on the strength of the *Henson* case, say that there is anything before

---

[2] *Taylor* v. *Walter* (1970), 384 Mich 114.
[3] *Henson* v. *Veterans Cab Co. of Flint* (1971), 384 Mich 486.

this Court today for this Court to pass on? I can't
see it.

"I would like to point out the second thing that
Justice Black raised in this opinion. The reason
I point to Justice Black's opinion is because the
fellows who were on the other side are on my team,
they are the guys with the white hats. Justice
Black, in his opinion, stated, and I raised this in my
brief, that the cases of *Niedzinski*[4] and *Van Goosen;*[5]
now the *Van Goosen case* was one of them that was
cited in Rule 607, as being the basis for the change
to make the driving record admissible. He says
then in his opinion that the *Niedzinski* case and the
*Van Goosen* case hold that the trial judge erred
reversibly in refusing to uphold the plaintiff's right
to cross-examination sought by him. Those cases
didn't say—those two cases went up on appeal be-
cause the defendant objected to the introduction of
evidence of prior convictions, and the trial court
permitted it. And the appeal went up on the basis
that the trial court erred in permitting cross-exami-
nation. It didn't say that the trial court erred. It
said that the trial court was right, that it was dis-
cretionary in that court to permit that. So maybe
that might explain why Justice Black made the mis-
take in his opinion. I don't know if that would
change his mind or not. But I would like to point
that out to him.

"Now, another thing that Justice Black said in
his opinion in the previous case was, that there was
no discretion exercised by Judge Fitzgerald in the
trial court when he refused to permit examination on
the driving record, because, he said in his several
remarks, making an improper left turn is not a
crime. I don't know if Justice Black was referring
to the fact that if he said that it is not a crime, all
misdemeanors and felonies are all crimes. I really
don't understand his reasoning. But Justice Black
says there was no discretion exercised. Well, if he

---

[4] *Niedzinski* v. *Coryell* (1921), 215 Mich 498.
[5] *Van Goosen* v. *Barlum* (1921), 214 Mich 595.

says it, I guess it must be true, but I don't understand what he means, and maybe there is some explanation which I cannot see.

"Now, I don't think it is any secret, certainly it isn't any secret to the trial attorneys and the people who are down the line a little ways, that the Supreme Court has been chipping away at getting this driving record into evidence.  It is gone over in some great extent, and Justice KELLY, God rest His Soul, did a tremendous job on reviewing the whole thing when his opinion was written on this case the time before.[6] It started with the *Smith* case, remember the *A. J. Smith* case and the *Elliott,* it was *Elliott* v. *A. J. Smith Construction Co.,*[7] when the driving record was permitted under, to show the negligent entrustment theory.  And it is really notable in that decision because the Honorable TALBOT SMITH, who is now—I don't know whether he has been promoted or noted—is now on the Federal Bench.  He stated in that opinion, and is commenting on rule, the reasons for Rule 723 [*sic*],[8] which prohibits the introduction of evidence of criminal convictions driving record. He says, 'The principal evil sought to be cured by that statute arise this way: A driver has been convicted of a criminal offense in connection with a traffic accident.  In addition, he is sued civilly with respect to the same accident.  There is a danger that the civil jury might, if permitted, consider the criminal conviction as evidence of negligence in the civil action, or in civil cases, that negligence in a prior case will be regarded as negligence, evidence of negligence in the later case.'

"Now, Justice BLACK signed that opinion, and whole heartily supported that.  Justice BLACK now signs the opinion in the *Sting* case, which is just the opposite.  Now, I am not saying people can't change their mind, but it is pretty hard for the guy down the

---

6 *Taylor* v. *Walter* (1970), 384 Mich 114, at p 121.

7 *Elliott* v. *A. J. Smith Contracting Company, Inc.* (1960), 358 Mich 398.

8 CLS 1956, § 257.731 (Stat Ann 1957 Cum Supp § 9.2431).

street to figure out what is going to happen if you keep changing your mind, and that is the reason we have been up here twice, and maybe this is the reason this case is going to be ten years old when it gets to be tried.

"Now, Rule 607, as we certainly are aware, arose out of, I think it had its inception in the second hearing on *Perin* v. *Peuler*.[9] And, I don't question the theory probably behind *Perin v. Peuler,* somewhat of negligent entrustment, if you want to, I don't quite agree with it, but, I say, you are entitled to your opinion, and maybe it is all right. I don't disagree legally with it, particularly. But, anyhow, that is where Rule 607 had its inception, and this Court informally, I am sure, gave considerable thought before they wrote the rule. They said, the rules of evidence as set forth in these cases shall be applicable, regarding driving records, notwithstanding what rule, what statute 723 [*sic*] says, where the legislature make the statute, says, you can't have any evidence of driving records in any civil proceedings. So the trial court down the line very closely followed this. I think they did. What did those cases say? Well, your four cases—one, *Van Goosen* case; second, *Zimmerman;*[10] third, the *Socony Vacuum*[11] case; and the fourth, the *Cebulak*[12] case. I reviewed all these cases in the first time we were up here, but since we have got a change of personalities, so I will, just for the benefit of these, might review these.

"The *Van Goosen* case involved, as I stated before, there was evidence introduced of convictions of a traffic record, over the objection of defense counsel, and that went up on the basis of an abuse of discretion. Again, this was something that was admitted, and it shouldn't have been, at least, they claimed. The *Zimmerman* case was one where a plea was en-

---

[9] *Perin* v. *Peuler* (1964), 373 Mich 531.
[10] *Zimmerman* v. *Goldberg* (1936), 277 Mich 134.
[11] *Socony Vacuum Oil Co.* v. *Marvin* (1946), 313 Mich 528.
[12] *Cebulak* v. *Lewis* (1948), 320 Mich 710.

tered, *Zimmerman* v. *Goldberg.* A. plea was entered
by the defendant to a, going through a light, I think
it was, or making an improper left turn, and as a
result, the accident ensued. He made an improper
turn, the accident ensued. He was charged in traffic
court with a criminal violation, or a traffic violation.
And he pled guilty, and so then along comes the trial
for the personal injuries. And he said, 'Well, I
didn't do this.' Then they wanted to introduce the
evidence of this plea. And the question was, quite
analogous to this, because they said the question was
'Were you ever arrested or convicted of a crime?'
And the judge, at first, just sustained the objection
to said crime. 'Improper left turn is not a crime.'
So he was confused somewhat and they referred to
this, and in that case, they said very clearly that
the law in Michigan is that the admission of evidence
of convictions of misdemeanors is still discretionary
with the court. However, in this case, the trial court
was in error in refusing to permit this, because it
related to the same incident and can be construed as
an admission or a prior condition taken at trial. I
don't disagree with that at all. I think that a person
should be put to task if he comes to court and he
makes a plea and later he is faced with a civil action
arising out of that same accident. I don't disagree
with that, but I think that case, and this is the case,
that you people picked out for us to follow. It is
discretionary with the trial court whether or not
evidence of convictions of unrelated traffic violations
is admissible. And we followed it. The case was
tried four years ago, and we are still fighting about
the same thing.

"Now, we come right down to this, it seems to me.
What are we talking about? We are talking about
credibility. Credibility is the whole nub of this
thing. This is what you are talking about when you
enact the rule. You said, credibility, whether or not
a witness, can be tested on his credibility, we will
determine whether he can, and for that purpose we
think that evidence of convictions of traffic violations

goes to credibility. This, we think it. But we are talking about credibility. Now, is evidence of conviction, or a plea in a traffic violation, something that is unrelated to the accident at hand—are we going to—first of all, does it go to a man's credibility? I don't know, but I would wager anyone of you have been stopped many times, I don't suppose you have gotten many tickets when they found out who you were, but just reflect on the number of times you could have, if you hadn't been who you were, and so then you come to court and they say, 'Look at that crook, he got convicted of going 75 miles an hour in a 70 zone.' Now does this go to your credibility? I point out in my brief. I will just read it, I said, I wouldn't hesitate one second trusting the family assets with some guy who made an improper left turn or was going 35 miles an hour in a 30 zone. I wouldn't hesitate. But I sure wouldn't trust him with five cents if he had been convicted of being a pickpocket, a shoplifter, or the shill who runs the shell game at the circus. But you know the strange thing about it now, the point at we now find ourselves, the trial court has no discretion at all in whether or not someone's driving record is being introduced, but he still can have discretion whether or not he will let in any evidence of whether he has ever been convicted of being a pickpocket, or a shoplifter, or caught in a house of prostitution. He can keep that out, because that hasn't anything to do with credibility; but they can't keep out the fact that he made an improper left turn or that he ran into someone in the rear end on the expressway in a traffic jam. Now, does this make sense? It doesn't make sense to me, and so Mr. Lopatin says, 'Why are you coming here?' Well, I said, 'Because you know I have a certain faith, a certain amount of faith in our jurisprudence, and I don't think you really meant what you said in the *Sting* case.'

"Pardon me, Justice Adams, but I've got to comment on this. And I just would like to read a little

bit of this, where Justice Adams said,[13] General Court Rule '607 was adopted by this Court in accordance with its rule-making powers,' etc. The central issue was the question of negligence, contributory negligence, etc. And he goes on to say, and this is important, On the issue of whom to believe, I believe the driving record of a plaintiff or defendant can become a crucial evidentiary factor. Now, may I ask, how in the world can the driving record of a man become an evidentiary factor, in the trial of a negligence case? How can the fact that he ran into somebody on the expressway three years ago in the rear end have anything to do whether or not he went through a red light today? Now, if you are talking about credibility, that is one thing, but it certainly has nothing to do with evidence. The driving history, both before and after the accident, whether it be for serious or minor infractions of the vehicle code, can have a vital bearing of enabling a jury to determine the truth of a plaintiff or defendant's testimony as to the exercise of due care. How in the world can that have anything to do with a man's ability to tell the truth? And that is what we are talking about. Now whether or not he drove negligently, or whether he's a careless driver, or whether he has been convicted ten times, that has nothing to do, we're talking about the credibility statute, and so I ask this Court, how in the world can a man's driving record have anything to do with, what you say, with the defendant's testimony as to the exercise of due care. I can't figure it out. We wind up, and we say, we conclude under Rule 607, as presently adopted by this Court, the trial judge has no discretion. Maybe I didn't read the same rule. Rule 607, as adopted by this Court, never said that there was no discretion. Quite the contrary, Rule 607, as adopted by this Court, says the court does have discretion, but it has discretion to permit it or to

---

[13] *Sting* v. *Davis* (1971), 384 Mich 608, 613–614.—Reporter.

keep it out. And all Rule 607 did, it said, forget about statute 723, they say you can't get it in. We're saying that if the trial judge wants to let evidence of prior convictions in, we're saying he can do it because it goes to the procedures in trial, and we're going to set the rules, and I don't blame you, that is O.K. with me, but that is all it said, it didn't say there was no longer discretion and it was a matter of right.

"I might comment. Justice KAVANAGH in that same opinion,[14] T. G. KAVANAGH, Justice T. G. KAVANAGH, kind of somewhat agreed with me. He still thinks under that, if I read his opinion correctly, he still thinks there is some discretion in the trial court, whether or not they're going to permit introduction of evidence of driving records; he thinks it is discretionary, and he winds up by saying, I think we better look at this Rule, because I think it needs some changing. He doesn't interpret, he says, I think it needs to be changed. It is all right with me if you want to change it. Because when you enacted the rule, one thing that is very important to me, and I read the last line of Justice BLACK's opinion in *Peuler* case, he says, I think the Rule should be improved. And he goes on to say, that it shall operate to the future and prospective. And I say, all right, gentlemen, if you are going to change Rule 607 in the middle of the ball game, that is O. K. with me, but let's make it work for the future, because that is what you did when you enacted it, and if you are going to change the rule, let's make it work to the future. Don't send it back for something in this case that was tried for four or five years ago. We followed the rule. Now, to say to the defendant, 'We've decided to change the rule, and so, Mr. Defendant, you pay for the

---

[14] *Sting* v. *Davis, supra,* pp 614, 615.—REPORTER.

expense of this.' I don't think that's cricket. Well, gentlemen, that's the reason I'm up here. Didn't have much to say. Well, it won't take long to write the answer to what is said. I just had to get it off my chest, and I thank you much for staying awake to listen to me. Thank you, Your Honors."