# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF AARON REID, by KENNETH
REID, Personal Representative,

   Plaintiff-Appellant,

v

THOMAS WALKER, KIMBERLY WALKER,
RAYMOND WILLIS, VAUGHN VOIGHT, and
FRANCINE VOIGHT,

   Defendants-Appellees,

and

FARM BUREAU GENERAL INSURANCE,

   Defendant.

UNPUBLISHED
February 7, 2017

No. 328587
Livingston Circuit Court
LC No. 14-028291-NI

---

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and GLEICHER, JJ.

PER CURIAM.

  Several hours before dawn on a November morning, Aaron Reid rode his bicycle along the right side of northbound Whitmore Lake Road, pedaling in the same direction as the flow of traffic. A Ford truck heading north struck Reid's bicycle. The impact propelled Reid onto the hood of the truck; he landed on the asphalt. Two oncoming vehicles struck Reid as he lay in the roadway. Reid died at the scene.

  The defendant drivers moved for summary disposition in the circuit court, arguing that no evidence substantiated any negligence on their parts and that Reid was more than 50% at fault for the accident. The drivers pointed out that the bicycle had no lights or reflectors, Reid had a blood alcohol level of 0.07, was wearing dark clothing, and according to one of the drivers, was moving across the lane of travel when initially struck. Counsel for Reid's estate responded with the reports of several expert witnesses, including two accident reconstructionists. The experts opined that the first driver hit the bicycle from behind while Reid rode essentially parallel with the right side of the road. The estate also cited inconsistencies in the witnesses' testimony and evidence that Reid was not impaired at the time of the accident. The circuit court granted

-1-

defendants' motion, finding that Reid was impaired due to intoxication and that the experts' opinions were conjectural, speculative, and not adequately detailed.

When viewed in the light most favorable to the estate, the evidence creates a genuine issue of material fact regarding the negligence of the driver that struck Reid's bicycle and the percentage of Reid's comparative negligence. We reverse the circuit court's grant of summary disposition to this defendant. As the estate failed to present any evidence substantiating that any negligence on the part of the other two drivers proximately caused Reid's death, we affirm the grant of summary disposition to those defendants.

I

During the evening of November 3, 2011, 19-year-old Aaron Reid and his friends, Mark Thibodeau and Jordan Salmi, gathered at Salmi's house. They played video games. Salmi, who was also under 21 years of age, called a nearby party store and arranged for delivery of a fifth of vodka. Around 1:00 a.m., the three rode mountain bikes to the Island Lake State Recreation Area. They shared the alcohol and biked the trails. At approximately 5:00 a.m., they traveled to a McDonald's and had a large breakfast.

The three young men left the McDonald's on their bicycles at approximately 6:00 a.m., heading north on Whitmore Lake Road with Thibodeau in the lead. After a roundabout at Lee Road, Whitmore Lake Road has two lanes of travel with gravel shoulders on both sides. The speed limit is 45 miles an hour. As the bikers crossed Lee Road, Thibodeau rode on the left shoulder, facing oncoming traffic. Reid rode on the right side of the road. Salmi recalls riding on the left behind Thibodeau; Thibodeau testified that Salmi was riding on the right, near Reid.

Defendant Thomas Walker, driving a Ford pick-up truck, headed north on Whitmore Lake Road behind the bikers. He crossed Lee Road and rounded a curve, traveling between 45 and 50 miles an hour. Walker testified at his deposition that he switched on his high-beam headlights as he negotiated the curve, anticipating that there might be deer in the area. He recounted that he saw Reid moving from right to left at an almost 90-degree angle across the roadway. Walker immediately hit his brakes and swerved to the left to avoid the bike. The right headlight of the truck struck Reid's bicycle. Reid's body hit the hood of the pick-up and landed near the road's center line. Walker's truck came to rest in the southbound lane of travel.

Thibodeau heard but did not see the collision. At his deposition, Salmi recalled that just before the accident, he was on the left side of the road. He testified as follows regarding Reid's movement on the bike:

> I guess he tried crossing over the road, but that's when he got hit by a car, you know. I don't know if he - - what he was doing. . . . Tried crossing the road or not.

* * *

> *Q*. . . . What was the first indication that you had that something bad had happened?

-2-

*A.* I heard it.

*Q.* And what did you hear?

*A.* The crash.

*Q.* And what - - what do you - - I mean - -

*A.* Him hitting the bike with the car.

*Q.* Okay. So you're hearing car on metal?

*A.* Yes.

*Q.* And did it ring immediately like vehicle on bike?

*A.* I don't remember.

*Q.* Okay. You heard a crash?

*A.* Yes.

*Q.* To your right and ahead of you, behind you, or beside you?

*A.* Beside me and maybe a little behind me.

*Q.* Okay. After you saw Aaron over there on the right-hand side, unsure of whether he's on gravel or far edge of the paved portion, as you're approaching this side street, did you ever - - do you ever remember making an observation of where he was or what he was doing again?

*A.* No.

* * *

*Q.* . . . So when you - - what did you see first, Aaron getting hit by the truck or hearing it?

*A.* I don't remember. It was all - - it happened all so fast.

*Q.* Are you aware of seeing contact between truck and Aaron and bike?

*A.* No. So it must have been I heard it first and when I turned around and looked real quick.

*Q*. And when you turn around and looked toward this sound, is Aaron on the bike in contact with the truck?

*A*. Yeah.[1]

Thibodeau and Salmi ran toward Aaron. Within a minute, they saw the headlights of an oncoming southbound car. Despite their screaming and Thibodeau's waving his white coat, defendant Willis's car struck Reid. A vehicle driven by defendant Voight followed closely behind Willis. Voight saw Walker's truck facing north in the southbound lane, swerved to pass the truck, and hit Reid's body. Emergency medical personnel pronounced Reid dead at the scene.

Livingston County Sheriff Deputy Brad Neff conducted a crash-scene investigation. He interviewed Salmi, Thibodeau, the three drivers and their passengers, inspected the vehicles, took photographs and measurements, and calculated speeds. Neff's report quotes Salmi as stating at the scene that Reid had started to cross the road without looking or signaling. Walker, too, claimed that Reid's bicycle had been traveling "on an angle in the northbound lane to the southbound lane." Based on skid mark testing, Neff determined that the pickup had been traveling at 39 to 42 miles an hour when it struck Reid, Willis's car was moving at 37 miles an

---

[1] Our dissenting colleague asserts that Salmi admitted at his deposition "that he could not dispute that he told Deputy Neff that Reid was trying to cross the road in front of the truck." Under oath, however, Salmi testified as follows:

*Q*. [W]hen the F-150 is coming up approaching [Reid], there's a whole indication he was crossing the street. You can't say whether he was actually crossing the street or not, correct?

*A*. Correct.

*Q*. And there's - - I think I wrote it down when you were talking about this earlier you said something like, I wasn't exactly paying attention, I'm unsure. I mean, it's just very specific, we need to know, did you ever see him attempt to cross the street in front of the truck specifically?

*A*. No.

*Q*. Okay. And for all you know, he could have been continuing to just ride straight in that lane and the truck just came up behind him, correct?

*A*. Yeah.

Any inconsistencies and contradictions in Salmi's statements are for a jury to resolve.

hour, and Voight's vehicle had a minimum speed of 33 miles an hour. Neff examined the Ford and determined that the driver's side headlight was "defective (burned out)".

A deputy working with Neff reported that Salmi smelled strongly of intoxicants. Salmi admitted that the three young men had been drinking alcohol that evening. Laboratory testing revealed that Salmi had a blood alcohol content of 0.10, and Thibodeau had a blood alcohol content of 0.06. Reid's blood alcohol level was 0.07.[2] Neff opined in the report that "[t]he proximate cause of this crash is Aaron Lee Reid."

Reid's estate filed suit against the three drivers. The drivers sought summary disposition under MCR 2.116(C)(10), contending that they were not negligent and that Reid was more than 50% at fault, precluding recovery under MCL 500.3135(2)(b). Defendants pointed to Reid's failure to signal properly before crossing the road, the lack of lights or reflectors on his bike, his dark clothing, and his alcohol use. The drivers further highlighted that no evidence supported any negligence on their parts.

The estate responded by arguing that defendant Walker was the sole cause of the first impact, as Walker admitted at his deposition that he had been speeding as he rounded the curve and physical evidence supported that Walker's truck hit the bike from the rear rather than from the side. Further, the estate pointed out, Walker's headlight was not working properly; Walker admitted at his deposition that he knew that the headlight was "finicky" and would shut off on its own "if you hit a bump too hard." The estate asserted that the other defendants contributed to Reid's death through their own negligence, underscoring their expert witness's conclusion that Willis and Voight were both traveling in excess of the speed limit, and noting that neither exercised proper caution when confronting a visible emergency on the road.

The estate supported its response with three expert affidavits and reports. John F. Wiechel, Ph.D., a mechanical engineer specializing in "biomechanics, automotive impact mechanics, pedestrian/bicycle safety, [a]nd conspicuity and human factors," concluded that Walker struck Reid's bike from the rear rather than the side. He described the post-accident condition of Reid's bicycle as follows:

> The bicycle is a Trek 8000 mountain bike with active front suspension and passive rear suspension. The brakes are side pull caliper design. Police photographs of the bicycle indicate the seat cushion was torn from the seat bracket, the rear wheel was deformed inward toward the rear axle, and the rear wheel was distorted. The right seat stay was broken from the rear dropout and the left seat stay was deformed downward. The chain stays do not align with each other. The rear wheel had rotated to the position where the inward deformation was at the brake calipers. There are no rear or front reflectors present on the

---

[2] Pursuant to MCL 257.625(1) and MCL 257.625a(7)(c), a person under age 21 "shall not operate a vehicle upon a highway or other place open to the general public" "[i]f the person . . . ha[s] any bodily alcohol content." The statute defines "any bodily alcohol content" as "[a]n alcohol content of 0.02 grams or more but less than 0.08 grams per 100 milliliters of blood[.]"

bicycle at the time the photographs were taken. The rear wheel has a white reflector attached to the spokes. This reflector appears to be broken and would only be effective at angles close to perpendicular to the heading of the bicycle.

Wiechel recapitulated the accident facts as stated in the police reports, noting that the pickup truck exhibited damage on the right front bumper, the upper right corner of the grill, the hood above the right headlight, and the right headlight cover. Regarding the mechanics of the collision, he concluded as follows:

> The damage to the bicycle indicates it was initially contacted by a vehicle bumper. One section of the rear wheel is crushed inward toward the rear axle. The rear wheel in the area of this distortion is not displaced sideways appreciably, indicating the bumper of the striking vehicle crushed the wheel forward. The seat stays are deformed consistent with an object striking them from the rear. The absence of other frame damage precludes the possibility that the bicycle was oriented sideways to the direction of travel of the pickup. The damage to the bicycle shows that **the bicycle was oriented predominantly parallel to the path of travel of the pickup at the time of impact and traveling in the same direction as the pickup.** [Emphasis in original.]

Wiechel also considered whether the absence of reflectors or lights played a role in the accident. He concluded that they did not, reasoning:

> The absence of reflectors or rear mounted lights can make it difficult for a driver approaching from the rear to discern the presence of the bicycle. The police report states that the accident took place on Whitmore Road [sic] 300 feet north of Leo Drive. There is a round-a-bout located about 100 feet south of Leo Drive. Traveling north from the round-a-bout, Whitmore Road curves to the left and straightens to a due north orientation at Leo Drive. The curve is about 250 feet long. [Walker] stated in his deposition that he switched from low to high beams when he was in the middle of the curve. The point where he switched to high beams would be about 400 feet from the accident site. After he switched to high beams, he stated that he saw the bicyclist. This observation is consistent with the expected illumination characteristics of high beam headlights. At his stated speed of 45 to 50 miles per hour, the Ford would have taken 5 to 6 seconds to travel 400 feet. This is sufficient time to see, perceive, and react to the presence of the bicycle. [Walker] stated that once he saw the bicycle, he steered toward the left lane to pass the bicycle. This maneuver indicates he had sufficient warning to react to the presence of the bicycle in a timely manner. **The absence of rear facing reflectors or a rear mounted light on the bicycle did not have any bearing on the occurrence of this accident.** [Emphasis in original.]

Finally, using the rest positions of the three vehicles and published maximum braking coefficients of friction, Wiechel calculated that the prebraking speed of the Ford was approximately 49 miles an hour, that of the second vehicle was approximately 46 miles an hour, and that the third was traveling approximately 51 miles an hour before the driver applied the brakes.

The second affidavit was signed by Timothy Robbins, a traffic crash reconstruction expert. Robbins noted that Deputy Neff's speed calculations "fall within expectations and published data," but expressed that a more accurate method of testing indicated that the Ford was traveling, at minimum, 44 miles an hour. Moreover, Robbins noted, the rear of the bike was damaged, and the accident photographs do not indicate contact with any part of the bike other than the rear. These findings led Robbins to conclude that the bike was struck from behind. Robbins opined that had Walker and Willis been driving more slowly they would have had more time to react, and that "Voight should have never decided to follow Willis's vehicle blindly past the Ford truck, especially given the appreciated unusual event that was occurring."

Finally, the estate included an affidavit from Dr. Werner U. Spitz, a forensic pathologist. In a three-page summary, Dr. Spitz reviewed the case facts and concluded:

> Under the circumstances of this crash, it is my opinion that alcohol played no role in causing or contributing to this unfortunate accident. In other words, had Reid had a zero blood alcohol concentration this accident would still have occurred in the same way and with the same outcome, nothing would have changed. Further, based on my review of the facts, I see no indication that Aaron Reid was impaired, intoxicated or rode his bike in a negligent manner.

In its bench opinion granting defendants' summary disposition, the circuit court stated that "when all of the facts are analyzed it's impossible to do anything but to conclude that Aaron [Reid] was more than 51 percent negligent and really there is no negligence on part of the defendants." The court noted that Reid did not have reflectors or lights on his bike. Walker's lights were working properly at the time of the accident and he had illuminated his high beams, the court determined. The court discerned no evidence that defendants were either speeding or traveling too fast for the conditions, and ruled that even if Walker had been traveling slightly above the speed limit, Reid was still "more than 51 percent at fault." The court opined that the estate's experts' conclusions regarding the position of the bike when it was struck were contradicted by the evidence, and found as a fact that Reid was attempting to cross the roadway when he was struck by the Ford:

> Much is made by the plaintiff as to where Mr. Walker's truck hit [Reid's] bicycle. Tried to show the Court that in fact Mr. Walker hit [Reid] from the rear. That [Reid] wasn't in fact crossing in front of Mr. Walker's truck. But their conclusion is based only on conjecture and speculation and is really devoid of any detail. Their conclusions are contradicted by every witness - - eye witness and the medical examiner. The facts establish that the plaintiff turned in front of Mr. Walker's vehicle. Officer Neff says in this cause analysis determination the proximate cause of this crash is Aaron Reid.

To buttress this finding, the circuit court quoted Salmi's statement as reported by Neff in his police report. The court reasoned that this version of the events was entitled to credence despite that "much later when his deposition was taken he wasn't as strong[.]" According to the court, "one's memory's usually clearer at the time of the accident rather than later." The court also found compelling Walker's concession that he had been traveling at 45 to 50 miles an hour, declaring that this admission "certainly show's he's not trying to hide anything. He's not lying."

Moreover, the court noted, Reid's blood alcohol content was 0.07. Although Dr. Spitz had concluded that alcohol was not a factor, the court ruled that this conclusion was not supported by any facts. Instead, the court quoted the medical examiner's deposition testimony that "even at lower levels," alcohol "can effect coordination, it can effect judgment, it can effect perception of distance."

The court summarized that the evidence supplied "only . . . a suggestion of a possibility of negligence by the defendants," which was not enough to create liability. Regarding Reid's comparative negligence, the court acknowledged that "[i]n order to claim the absolute defense of intoxication the defendants are required to establish that . . . Reid had impaired ability to function due to the influence of intoxicating liquor." The court found that "[o]ne only has to look at all of the actions taken by Mr. Reid, which I've tried to go through in great length, to understand and accept that alcohol affected his ability to function." The court expressed that Reid's "substantial and uncontroverted" "fault," coupled with his intoxication, precluded any recovery.

Reid's estate now appeals.

II

"We review de novo a circuit court's summary disposition ruling." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). When considering a motion for summary disposition under MCR 2.116(C)(10), a court must view the evidence submitted "in the light most favorable to the party opposing the motion." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. Our Supreme Court has further instructed that "[a] genuine issue of material is created when the affidavits, pleadings, depositions, admissions and documentary evidence, viewed in the light most favorable to the party opposing the motion, might permit inferences contrary to the facts as asserted by the movant." *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 360; 320 NW2d 836 (1982).

III

Among the well-established principles governing summary disposition analysis summarized above, none are more salient here than the axiom that when entertaining a summary disposition motion under subrule (C)(10), the court must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the nonmoving party, and refrain from making credibility determinations or weighing the evidence. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). The circuit court violated all of these precepts.

One might rationally argue that Deputy Neff correctly attributed all fault for the crash to Reid, and a jury may eventually so find. On the other hand, neither this Court nor the circuit court may simply disregard the evidence presented by the estate. Nor may a court choose to credit the testimony of one witness over that of another, or make findings regarding which

witnesses were more believable. By ignoring the expert testimony, judging the credibility of the witnesses, and selectively picking and choosing facts from the record, the circuit court usurped the function of the jury.

The evidence presented by the estate tended to show that Walker was driving at a negligently excessive speed under the circumstances and failed to react appropriately when he spotted Reid's bicycle in the distance. "As a general rule, it can not be doubted that the question of negligence is a question of fact and not of law." *Detroit & Milwaukee R Co v Van Steinburg*, 17 Mich 99, 118 (1868). We conclude that genuine issues of material fact exist regarding whether Walker's truck negligently struck Reid's bicycle from behind, causing his death. Further, contrary to the circuit court's ruling, Reid's 0.07 blood alcohol content did not end the inquiry into his comparative negligence given unrebutted record evidence that he exhibited no signs of impairment before the crash.

IV

Many years ago, our Supreme Court declared that the rights of drivers and bicyclists to use the public roads are "mutual and co-ordinate." *Vercruysse v Ulaga*, 229 Mich 49, 53; 201 NW 192 (1924). At that time, *Niedzinski v Coryell*, 215 Mich 498, 505-506; 184 NW 476 (1921), was the case most descriptive of the duties assigned to each. Because the rules of the road applicable to bikers and drivers have remained substantially unchanged since 1921, the facts and holding of *Niedzinski* bear brief review.

*Niedzinski* arose from a collision between the defendant's Cadillac and the plaintiff's bicycle. Both were traveling in the same direction on a "main thoroughfare of Bay City." *Id*. at 501. The accident occurred in the rain, as daylight was "fading." *Id*. The plaintiff recalled hearing the car approach from behind him, and noted at the time "that the automobile had plenty of room to pass him on either side[.]" *Id*. Nevertheless, the Cadillac struck the bicycle "in the rear," throwing the plaintiff to the ground. *Id*. at 501-502. The Supreme Court stated, "The evidence appears to be undisputed that the rear end of the bicycle was wrecked and the front practically uninjured." *Id*. at 502. The driver claimed to have seen the bicyclist " 'wobbling along a little' " and " 'going down rather crooked.' " He asserted that the biker " 'actually ran right into me in the front fender' " despite his efforts to avoid the accident. *Id*. The plaintiff denied having swerved. *Id*.

The plaintiff's complaint characterized the defendant's negligence as " 'running said automobile at an excessive speed and in failing to turn out to the left the pass said plaintiff.' " *Id*. The court directed a verdict regarding the defendant's excessive speed, leaving only the allegation that the defendant had failed to use due care when passing the plaintiff. The jury found for the plaintiff. *Id*. at 504.

The defendant "strenuously argued" on appeal that the plaintiff's negligence had caused the accident, as the plaintiff incorrectly believed that the Cadillac was required to pass on his right side. *Id*. at 504-505. The Supreme Court noted that "[a]pparently plaintiff was not the only one confused as to the law applicable to the situation." *Id*. at 505. To allay any confusion, the Court clarified that autos must pass bicyclists on the left. *Id*. at 506. Quoting 2 Elliott on Roads and Streets (3d ed), § 1084, the Court held that while " 'it is most common for the rear vehicle to

pass the other on the left,' " passing on either side is acceptable as long as it is done carefully. *Id*. The Supreme Court observed that "[t]here was certainly room to pass on the one hand or the other in this case," and added:

> If he was "wobbling along," half way between the west track and the curb, when the driver of the auto saw him 75 feet away, the latter had a clear three-quarters of the entire street on the left available, and it was his duty in passing to exercise that care to avoid an accident commensurate with such situation. Defendant's only claim of contributory negligence is that plaintiff swerved his bicycle to the left, or the wrong way, which is denied, presenting a question strictly within the province of the jury. [*Id*. at 507.]

The plethora of vehicle-related statutes enacted since 1921 has not altered the rule that when bicyclists and drivers share the road, both must observe duties of reasonable care. MCL 257.657 provides:

> Each person riding a bicycle, electric personal assistive mobility device, or moped or operating a low-speed vehicle or commercial quadricycle upon a roadway has all of the rights and is subject to all of the duties applicable to the driver of a vehicle under this chapter, except for special regulations in this article and except for the provisions of this chapter that by their nature do not apply.

While a bicyclist must signal a turn, MCL 257.648, and use a visible "lamp" when traveling "between ½ hour after sunset and ½ hour before sunrise," MCL 257.662(1), a motorist must use due care when passing a bicycle that can be seen. Further, every driver bears a statutory duty to operate his or her vehicle "at a careful and prudent speed not greater than nor less than is reasonable and proper," and "shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead." MCL 257.627(1). In other words, "a driver shall not operate his vehicle so fast that he cannot bring it to a complete stop within that distance ahead of him in which he can clearly perceive any object that might appear in his path." *Cole v Barber*, 353 Mich 427, 431; 91 NW2d 848 (1958).

Here, we must apply these background principles concerning the car-bicycle relationship in a broader legal context. Reid's estate contends that the circuit court improperly granted defendants' summary disposition because material questions of fact exist regarding whether Walker negligently struck the bike from behind despite having seen Reid in time to have avoided him. Material fact questions also precluded summary disposition as to the other two drivers, the estate insists, because both were speeding and should have seen the body in the road and maneuvered around it. Defendants respond that Reid's inexcusable violations of MCL 267.662(1), the statute requiring bicyclists to illuminate lamps when riding in the dark, and MCL 257.625a(7)(c), which dictates that an individual under 21 years of age is intoxicated if he or she has a blood alcohol content of 0.02 to 0.08, preclude a finding that defendants proximately caused the accident. Moreover, defendants contend, no evidence supports that they drove negligently under the circumstances.

Because our analysis involves the application of several aspects of the law governing negligence claims, we turn to a discussion of the general legal principles relevant to this case.

To establish a prima facie negligence claim, a plaintiff must "prove that (1) the defendant owed a duty to the plaintiff[;] (2) the defendant breached that duty;" (3) the defendant's breach of duty proximately caused the plaintiff's injuries; and "(4) the plaintiff suffered damages." *Berryman v K Mart Corp*, 193 Mich App 88, 91-92; 483 NW2d 642 (1992). "Negligence may be established by circumstantial evidence as well as by direct proof and they are equally competent, their relative convincing powers being for the jury to determine." *Spiers v Martin*, 336 Mich 613, 616; 58 NW2d 821 (1953). Circumstantial evidence and permissible inferences arising therefrom may suffice to prove negligence. *May v Parke, Davis & Co*, 142 Mich App 404, 417; 370 NW2d 371 (1985).

Causation in a negligence action requires proof of both cause in fact and proximate cause. *Reeves v Kmart Corp*, 229 Mich App 466, 479; 582 NW2d 841 (1998). Cause in fact "generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). Proximate cause involves an examination of the foreseeability of consequences, and a determination whether a defendant should be held legally responsible for those consequences. *Id.* An injury may have more than one proximate cause. *Brisboy v Fibreboard Corp*, 429 Mich 540, 547; 418 NW2d 650 (1988). Two causes often operate concurrently so that both constitute a proximate cause of resultant harm. *Id.* Although the plaintiff bears the burden of proof as to causation, the plaintiff need not produce evidence positively eliminating every other potential cause of an accident. *Skinner*, 445 Mich at 159. Normally, the issue of causation belongs to the jury. *Reeves*, 229 Mich App at 480.

In the vehicle collision context, a plaintiff's comparative fault does not bar the recovery of damages unless he is determined to have been "more than 50% at fault." MCL 500.3135(2)(b). Additionally, a plaintiff may not recover if her negligence is the sole proximate cause of her injuries. *DeGrave v Engle*, 328 Mich 565, 569-570; 44 NW2d 181 (1950). The standards for determining a plaintiff's comparative negligence are indistinguishable from those applicable to the negligence of a defendant, and the determination of a plaintiff's negligence is for the jury "unless all reasonable minds could not differ." *Rodriguez v Solar of Mich, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991). "It is for the jury to determine whether a violation of a statute was a proximate cause of the accident." *Id.*

V

We begin with the question of Walker's negligence. Walker bore a duty to operate his truck with the degree of "reasonable care that would be exercised by a person of ordinary prudence under all the existing circumstances," *Case v Consumers Power*, 463 Mich 1, 6-7; 615 NW2d 17 (2000) (quotation marks and citation omitted), and in a manner prescribed by the motor vehicle code. MCL 257.627(1) obligated Walker to proceed at a speed that would permit him to stop "within the assured, clear distance ahead." All drivers must "maintain a reasonable and proper outlook for the safety of others on the highway." *Dempsey v Miles*, 342 Mich 185, 193; 69 NW2d 135 (1955). The presence of a pedestrian in the road—or a bicyclist—may reasonably require a motorist to slow down and to take precautions to avoid a collision. *Id.* On the other hand, the assured clear distance statute is inapplicable when an object suddenly and unpredictably intersects the motorist's path of travel. *Cassibo v Bodwin*, 149 Mich App 474, 478; 386 NW2d 559 (1986).

To determine whether a material question of fact exists regarding Walker's negligence, we examine the record facts and their concomitant reasonable inferences in the light most favorable to the estate. In doing so, we must scrupulously avoid making credibility determinations or weighing the evidence, as the jury is the sole arbiter of the facts. See *Anderson v Liberty Lobby, Inc*, 477 US 242, 249; 106 S Ct 2505; 91 L Ed 2d 202 (1986) ("[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial . . . ."). Although a jury might ultimately credit Walker's version of the events, summary disposition in his favor is warranted only if there is no material dispute regarding Walker's negligence. In applying the federal courts' similar guidelines regarding summary judgment, the United States Supreme Court recently chastised a judge who made the same error as the circuit court in this case:

> The witnesses on both sides come to this case with their own perceptions, recollections, and even potential biases. It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system. By weighing the evidence and reaching factual inferences contrary to Tolan's competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party. [*Tolan v Cotton*, __ US __ ; 134 S Ct 1861, 1868; 188 L Ed 2d 895 (2014).]

Given these standards, the estate's evidence created a question of fact regarding whether a reasonable, prudent driver in Walker's position would have seen and avoided Reid's bicycle before striking it. Wiechel concluded that Walker struck only the rear of Reid's bicycle, and that "[t]he bicycle was oriented predominantly parallel to the path of travel" at the time of impact. This finding contradicted Walker's deposition testimony that the collision occurred as Reid was "going from right to left," and "still riding in the middle of the northbound lane when I had clipped the front of his bike with my passenger's side headlight." Wiechel opined that the photographs revealed no damage to the bike's frame consistent with a sideways impact. The circuit court rejected Wiechel's conclusion, deeming it conjectural and speculative and "really devoid of any detail." We cannot accept this characterization. Wiechel (whose engineering qualifications no one has challenged) based his opinion on an examination of police photographs of the bicycle and the truck, and the details provided in Neff's report. The photos and the measurements qualify as "hard evidence," not the products of Wiechel's imagination. Further, the circuit court's finding that Wiechel's opinion was "really devoid of any detail" is not borne out by the record. Wiechel explained in considerable detail the bases for his opinion; we have quoted his specific findings and the data underlying his conclusions above.

Contrary to the circuit court's ruling that "[t]he facts establish that plaintiff turned in front of Mr. Walker's vehicle," Wiechel's report creates a genuine issue of material fact regarding the angle at which the truck hit the bike, and the bike's direction of travel at the time it was struck. And we soundly reject the circuit court's determination that Salmi's statement in Neff's report that Reid "was starting to cross the road" when hit by the truck was more believable and trustworthy than Salmi's subsequent deposition testimony, or, by implication, Wiechel's findings.

Generally, police reports constitute inadmissible hearsay. MRE 801(c); MRE 802; *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App 243, 254; 805 NW2d 217 (2011). Salmi's statement, contained within Neff's report, is hearsay within hearsay. *Hewitt v Grand Trunk Western R Co*, 123 Mich App 309, 315; 333 NW2d 264 (1983). Even if Neff's report was admissible, no foundation was laid to establish the admissibility of Salmi's statement through an exception to the hearsay rule.

The circuit court's decision to disregard Salmi's sworn deposition testimony in favor of his quoted statement in Neff's inadmissible report was grossly improper. When deciding a motion for summary disposition, a court may not disregard evidence it finds inconvenient, or weigh the strengths and the weaknesses of the testimony, as did the circuit court ("one's memory is usually clearer at the time of the accident rather than later").[3] And "when the truth of a material factual assertion depends on the credibility of a witness, a genuine factual issue exists and summary disposition may not be granted." *Auto Club Ins Ass'n v State Auto Mut Ins Co*, 258 Mich App 328, 335-336; 671 NW2d 132 (2003).

Furthermore, evidence presented by the estate supports that Walker was speeding at the time he struck the bicycle, and that one of his headlights was not working, contrary to the circuit court's finding.[4] Reasonable inferences from that evidence, combined with the experts' reports, create fact questions regarding whether Walker used reasonable care when he spotted the bike in the distance.

Walker testified that he "immediately" flashed on his high beams as he came out of the curve on Whitmore Lake Road. According to Wiechel, that point was "about 400 feet from the accident site." At a speed of 45 to 50 miles an hour, Wiechel calculated that it would have taken Walker's vehicle five to six seconds to travel the 400 feet, "sufficient time to see, perceive, and react to the presence of the bicycle." Viewed in the light most favorable to the estate, a reasonable inference could be drawn that Walker would have avoided the collision had he been traveling more slowly, and that the absence of lights or reflectors on Reid's bicycle did not play a role in the accident. The circuit court improperly disregarded this evidence in finding that Walker had not been speeding, and that Reid's violation of MCL 257.648 was a proximate cause of the accident.[5] The estate's evidence establishes material fact questions in both regards.

---

[3] The circuit court committed the same error when it ruled that Walker's testimony was credible. ("And Mr. Walker was honest enough to say he may have been going between 45 and 50, which certainly shows he's not trying to hide anything. He's not lying."). We remind the circuit court that it may not make credibility determinations on summary disposition.

[4] Deputy Neff testified that the driver's side headlight of the pickup truck was burned out. Whether Walker was using his high beams at the time, and the effectiveness of the high beams in illuminating Reid, are fact questions that the jury must resolve

[5] The absence of a light on a bicycle does not preclude recovery unless it is a proximate cause of the accident. *Suarez v Katon*, 299 Mich 38, 44; 299 NW 798 (1941). The circuit court rejected Wiechel's conclusion regarding Reid's failure to illuminate the bike, asserting that it "makes no

The same principles guide our holding that the circuit court erred by finding that Reid was more than 50% responsible for the crash. MCL 500.3135(2)(b) provides that noneconomic damages under the no-fault act "shall be assessed on the basis of comparative fault, except that damages shall not be assessed in favor of a party who is more than 50% at fault." MCL 600.2955a provides an absolute defense when a plaintiff's impairment from alcohol accounts for more than 50% of the cause of an injury-producing accident:

(1) It is an absolute defense in an action for the death of an individual or for injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, the individual was 50% or more the cause of the accident or event that resulted in the death or injury. If the individual described in this subsection was less than 50% the cause of the accident or event, an award of damages shall be reduced by that percentage.

(2) As used in this section:

(a) "Controlled substance" means that term as defined in [MCL 333.7104].

(b) "Impaired ability to function due to the influence of intoxicating liquor or a controlled substance" means that, as a result of an individual drinking, ingesting, smoking, or otherwise consuming intoxicating liquor or a controlled substance, the individual's senses are impaired to the point that the ability to react is diminished from what it would be had the individual not consumed liquor or a controlled substance. An individual is presumed under this section to have an impaired ability to function due to the influence of intoxicating liquor or a controlled substance if, under a standard prescribed by [MCL 257.625a], a presumption would arise that the individual's ability to operate a vehicle was impaired.

In interpreting this statute our first step "is to examine its plain language, which provides the most reliable indicator of [the Legislature's] intent." *Ter Beek v City of Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014). "When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 85; 878 NW2d 816 (2016).

MCL 600.29551(1) provides that an intoxication defense requires proof that the plaintiff "had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, the individual was 50% or more the cause of the accident or event that resulted in the death or injury." Plainly, the presence of an elevated blood alcohol level alone does not establish the defense; the statute additionally requires

sense" and "to me seems completely contradictory." We do not share this interpretive difficulty. Wiechel meant that because Walker admitted to having seen the bicycle from a distance that Wiechel believed adequate to avoid it, the lack of lights or reflectors could not have been a proximate cause of the accident.

evidence that the plaintiff "had an impaired ability to function" on account of his or her use of alcohol. The Legislature defined an "impaired ability to function" as an impairment of "the individual's senses . . . to the point that the ability to react is diminished from what it would be had the individual not consumed liquor." MCL 600.2955a(2)(b). A person is presumed to have an impaired ability to function when his or her blood alcohol level exceed the legal limit set forth in MCL 257.625a.

Because Reid's blood alcohol level exceeded the legal limit for a person less than 21 years of age, defendants were entitled to a presumption that he had an impaired ability to function at the time of the accident. That presumption, however, is rebuttable. The "usual standard required to overcome a rebuttable presumption" is "competent and credible evidence." *Reed v Breton*, 475 Mich 531, 539; 718 NW2d 770 (2006). With the introduction of evidence rebutting a presumption, a question of fact arises:

> If the trier of fact finds the fact which supports the presumption, the ultimate fact must be found in the absence of evidence to the contrary. If contrary evidence is offered, the trier is free from the compulsion of the presumption and weighs all the evidence, including the evidence of the basic fact. The trier is free to infer the existence of the ultimate fact, but the law does not require it. [*Johnson v Secretary of State*, 406 Mich 420, 441; 280 NW2d 9 (1979).]

Both Salmi and Thibodeau testified that Reid was not impaired at the time the trio left the McDonald's. Thibodeau stated that despite having imbibed the alcohol, "[w]e could still ride bikes perfectly fine," and that Reid in particular "was riding fine to me." Salmi denied that Reid was unable to handle his bike or had any problem doing so due to the alcohol he had consumed. Although the medical examiner testified that alcohol affects coordination and gross motor skills even at low levels, she refrained from rendering an opinion regarding the extent that alcohol played a role in the accident. Given the testimony of Salmi and Thibodeau that Reid did not appear impaired, the circuit court erroneously found as a matter of law that Reid's intoxication rendered him more than 50% at fault for the crash.

As to defendant Walker, on the record before us, material questions of fact abound. Whether Walker was speeding, illuminated his high beams, saw Reid in time to avoid him, and hit the bicycle from the rear or the side are all contested fact questions for a jury to resolve. Similarly, viewed in the light most favorable to the estate, Reid's level of impairment is subject to reasonable debate. Because differing inferences regarding Reid's level of impairment may be drawn from the record, summary disposition is inappropriate on this ground. Accordingly, we reverse the circuit court's grant of summary disposition to Walker, and remand for further proceedings.

VI

We reach a different conclusion regarding the propriety of summary disposition as to defendants Willis and Voight. Despite the length of its bench opinion, the circuit court shed little light on the reasons it found that defendants Willis and Voight were not negligent. Our de novo review of the record permits us to affirm this finding, however, as the estate presented no evidence that Willis or Voight could or should have been able to perceive Reid's body in the

road before striking it. Although both clearly visualized an unexpected event occurring on the right shoulder as they approached the accident scene, neither driver perceived that Reid lay on the asphalt in the lane of travel.[6] Both steered away from the danger they readily perceived: a truck facing the wrong-way on the road, with its headlights shining directly in the eyes of the oncoming drivers. Tragically, the maneuvers made by these drivers to avoid striking the truck resulted in further injury to Reid.

Wiechel and Robbins opined that these two drivers should have been traveling at a slower speed, and would have had more time to react had they done so. But neither expert supplied the missing link for proximate causation purposes: that had they been driving with due care, both drivers would have avoided striking Reid. Accordingly, we affirm the circuit court's grant of summary disposition to Willis and Voight.

We affirm in part, but reverse the circuit court's summary disposition ruling as to defendant Walker and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher

---

[6] Willis testified that he saw an object in the road in the seconds before he struck it, but did not perceive it as a human form.